LOUISVILLE, NEW ORLEANS & TEXAS RAILWAY COMPANY *v.*
· LETHIA WILLIAMS.

| 69 | 631 |
|----|-----|
| 70 | 443 |
| 69 | 631 |
| 71 | 240 |
| 69 | 631 |
| 87 | 488 |

1. RAILROADS.   *Injury to child on track.   Trespasser.   Measure of liability.*

A child, seven years old, of precocious judgment, who lies down to sleep
on a railroad-track is a trespasser, and, in running its trains, the rail-
road company owes to it, in that situation, no duty except to avoid the
infliction of injury wilfully or wantonly.

2. SAME.   ·*Duty of company.   Liable only for wilful wrong.*

In such case the engineer of a running train is only required to abstain
from wilful or wanton negligence.   He is not bound to do every thing
possible to avoid injury, until after he sees the child in peril.

3. SAME.   *Object seen on track.   Duty of engineer.   Case.*

Although the engineer sees the object on the track a sufficient distance
ahead to stop the train, yet he is not bound to do so if he believes it to
be a bundle or a dog, and only discovers that it is a child on a nearer
approach.   If he then promptly reverses the engine, puts on brakes and
does every thing possible to avoid injury, and the child is nevertheless
hurt, the company is not liable.

FROM the circuit court of Washington county.
HON. R. W. WILLIAMSON, Judge.

Action by appellee against the Louisville, New Orleans &
Texas Railway Company for personal injuries.   Plaintiff was
seven years old, and lived with her mother near the railroad.
On the day of the injury she was sent by her mother to an
adjoining plantation to play with other children.   There she
was taken sick with a chill, and was sent home by her rela-
tives.   There was no common road, and she walked on the
railroad-track.   She had often been on the railroad, and
knew the danger of trains, but testified that on this occasion
she was "out of her head."   The railroad crosses a stream
near that point.   About a mile and a quarter south of it is

Elizabeth, a station. From the south bank of the stream there is a trestle three hundred or four hundred feet long. Then, going south a short distance, there is a fill eight or ten feet high, and below it another long trestle, ten or twelve feet high, on which the child was when injured. South of this a short distance is the crossing of the Georgia Pacific Railroad. Plaintiff testified that, going south on her way home, she went upon the trestle and walked a few steps, and then laid down on the track and went to sleep. She was, in fact, however, some distance from the north end of the trestle. The injury occurred about 4:30 o'clock in the afternoon of a clear day in the month of July. Defendant's passenger-train, going south, came along, a little behind time, running about twenty-five miles an hour. The track was in good condition, and the train equipment was good. The track was straight and nearly level for over a mile, and the view was unobstructed. Approaching the trestle, the engineer testifies that he had his eye on the track, and that he saw something on the trestle, but that he had no idea that it was a child. He says: "It did not resemble a child; it resembled a bundle of some kind, or a dog, or something of the kind; and when I got in about fifty yards—I say about that—I blew the whistle for the Georgia Pacific crossing, and the child raised up her head, and that was the first I knew it was a child. I put on the air-brakes, reversed my engine, and did every thing in my power to stop, but it was too late then."

The child was lying upon the guard-rail of the track, which is about four inches from the iron rail. She testified that she did not think she heard the whistle, but that she was awakened by the rattling of the irons, the train being very near. She tried to roll out of the way, and, in doing so, threw her left foot on the track, and the toes were mashed off. The engineer testified that he could have made an ordinary stop in about eight hundred feet; that he saw the object on the track at a greater distance than that, but did not

know that it was a human being; that he used every effort to stop the train as soon as he discovered that it was a child, and that he really exposed the train to danger in doing so. He testified that scraps and waste-paper, generally thrown out by passengers, are frequently seen along the track, and that, to stop for these every time, the schedule could not be run. The whistling-post for the station was about fifty yards north of the trestle, and it was there the whistle was blown, which caused the child to look up. The testimony shows that the trestle was used by the public as a passway. The child was the only witness in her own behalf. Four witnesses were introduced by the defendant to prove diligence. There was little or no conflict in the testimony, about the only conflict being as to the immaterial point how far the child had walked upon the track before she laid down to sleep.

A peremptory instruction to find for defendant was refused.

This court condemns the following instruction which, with others, was given for the plaintiff:

" 2. The court instructs the jury that if they find from the evidence that the plaintiff, at the time of the accident, was a child of seven years of age, and was lying upon the track of the defendant, unconscious from illness or sleep, until aroused by the near approach of the train, but too late to enable her to escape the injury; and if they further believe from the evidence that the engineer in charge of the train saw the plaintiff lying upon the track, but that he thought she 're-sembled a bundle of some kind, or a dog, or something of the kind,' still, if the jury further believe from the evidence that the engineer thus saw the plaintiff in ample time to stop or check his train and avoid the injury, and that a competent engineer, in the exercise of ordinary care and prudence, under all the circumstances of the case, could have so checked or stopped his train, so as to avoid injury in case the object seen should prove to be a human being, and would have thus

avoided the injury, and that the engineer did not do so, the defendant was liable for negligence, and the jury will find for the plaintiff, and assess compensatory damages."

This court holds that the court below erred in refusing to give, at the instance of defendant, the following instructions:

· "5. The court instructs the jury that the engineer in charge of the locomotive inflicting the injury on Lethia Williams was under no legal obligation to see her sooner than he would have been had she been an adult, and owed to her no greater duty than to an adult, until after he discovered that she was a child, and in danger; and if, after discovering her to be a child and in danger, he applied the air-brakes of his train, reversed his engine, and did every thing else that he could to avoid inflicting the injury on her, they will find for the defendant.

"6. The court instructs the jury that the engineer in charge of defendant's locomotive at the time the injury was inflicted on Lethia Williams, on discovering the said Lethia Williams on the track, in the absence of knowledge as to her minority, had the right to assume that she would get off the track as the train approached her, and so avoid collision, and that defendant, in the absence of knowledge of her minority, owed her no more duty than it would have done had she been an adult, until after discovering that she was a child of tender years, and could not get off the track, and out of danger, and, after making said discovery, the defendant was only under obligation to take all possible precaution to avoid said injury; and, if the jury believe from the evidence that such precaution was taken by the employes of defendant, after they discovered the said Lethia Williams to be on the track, and in danger, they will find for the defendant.

"8. The court instructs the jury that if they believe from the evidence that Lethia Williams, at the time she was injured, was using the track of the defendant, elsewhere than at a lawful crossing, as a foot-path for her own convenience, that plaintiff cannot recover damages from the defendant be-

cause of said injury, unless they believe from the evidence that the employes of defendant, at the time said injury was inflicted, were guilty of wanton or gross negligence.

"9. The court instructs the jury that if they believe from the evidence that Lethia Williams, at the time she was injured, was using the track of the defendant, elsewhere than at a lawful crossing, as a foot-path for her own convenience, and, that at said time, she was possessed of sufficient precocity and intelligence, notwithstanding her tender years, to appreciate the danger into which she entered in going upon said track, she was guilty of contributory negligence, and they will find for the defendant, unless they believe from the evidence that, at the time the injury to said Lethia Williams was inflicted, the employes of the defendant were guilty of gross or wanton negligence."

"10. The court instructs the jury that, notwithstanding the fact that at the time the injury was sustained by Lethia Williams she was only seven years of age, yet, if they believe from the evidence that she had sufficient intelligence, at the time she went on the defendant's track or right of way, to know it was dangerous for her to walk upon said track or right of way, because of said track or right of way being used for the movement of trains and the running of steam-engines thereon, and that it was dangerous for her to come in contact with trains or engines being moved or run on said track or right of way, and that at the time she went upon said track or right of way she possessed suficient precocity to appreciate the danger into which she entered in going upon said track or right of way, the jury may find that she was guilty of contributory negligence, if, in their opinion, the evidence shows that her going upon said track or right of way contributed to her injury, and that the employes of the defendant, at the time of the infliction of the injury on her, were not guilty of gross or wanton negligence."

Verdict and judgment in favor of plaintiff for $1,000.

Motion for new trial overruled. Defendant appeals. The opinion contains a further statement of the case.

*Mayes & Harris,* for appellant.

The defendant's engineer was not chargeable with negligence in failing to see plaintiff sooner. *Railroad Co.* v. *Stroud,* 64 Miss., 784.

He is under the necessity sometimes to be engaged otherwise than in watching the track. *Howard* v. *Railroad Co.,* 67 Miss., 247.

A railroad company owes no duty to a trespasser on its track, except to abstain from wilful or wanton injury. 89 Ala., 213; 83 Ga., 266; 77 Texas, 179. See especially *Toomey* v. *Railroad Co.,* 3 Am. R. & Corp. Rep., 386, a California case, to be found also in 24 Pacific Rep., 1074. We also refer to the following authorities, which are cited apart from their bearing on the question of contributory negligence: 129 Mass., 420 s.c. 2 Am. & Eng. R. R. Cas., 121; 44 Pa., 375; 47 *Ib.,* 300; 95 *Ib.,* 398; 99 *Ib.,* 301; 78 Ind., 323; 71 Ill., 501; 70 Ga., 207; 27 Kan., 83; 59 Cal., 269; 59 Tex., 373; 95 Ind., 286; 64 Iowa, 395; 32 Minn., 510; 3 Am. & Eng. R. R. Cas., 498; 6 *Ib.,* 1, 8; 12 *Ib.,* 70, 77, 89; 19 *Ib.,* 98, 108, 173.

As to keeping a lookout for trespassers on the track, no more stringent rule is required in case of children than in case of adults. The law does not require the employes to *see* an infant on the track when they would not, under like circumstances, be required to see an adult. The difference as to the degree of care to be observed when children are on the track comes in *after they are seen.* 44 Pa., 375; 47 *Ib.,* 300; 95 *Ib.,* 398; 99 *Ib.,* 301; 4 Hughes, 157, 172; 34 La. An., 160; 126 Mass., 377. See especially *Scheffler* v. *Railway Co.,* 32 Minn., 510.

It makes no difference that persons were accustomed to walk on the track. Beach on Con. Neg., 219; Patterson's Ry. Ac. L., § 205.

The engineer was not required, so soon as he saw an object

near the track, to stop his train, the object not being of an alarming appearance, or like a human being. It would be unreasonable to require railroads to govern their tremendous machinery by such remote possibilities. 34 La. Ann., 160; 56 Ind., 396. The case of *Manly* v. *Railroad Co.*, 74 N. C., 655, is exactly like this, and the court held that no negligence rested on the company.

The case of *Meeks* v. *Railroad Co.*, 56 Cal., 513, is not an authority against the appellant. On the second trial, that was shown to be a case of wilful or reckless neglect. In *Isabell* v. *Railroad Co.*, 60 Mo., 475, there was special circumstances which led the court to say that the engineer, after seeing, ought to have distinguished. In that case, the child was sitting up, and might easily have been seen.

The case in 5 Sneed, 524, is very different from this. There was a very stringent rule, which required the whistle to be blown and brakes put on so soon as *any* obstruction was seen on the track.

According to *Westbrook* v. *Railroad Co.*, 66 Miss., 560, and *Vicksburg* v. *McLain*, 67 *Ib.*, 4, the plaintiff was *prima facie* incapable of negligence, but this presumption is disputable. Plaintiff was guilty of contributory negligence, and the verdict should have been set aside on that ground. See 1 Graham & Waterman on New Trials, 367; 8 Smed. & M., 324, 498; 45 Miss., 683.

*W. G. Phelps*, for appellee.

Although the engineer testifies that he did not suppose the object on the track was a human being, it appears that he did see the plaintiff at a greater distance that would have been necessary to stop the train. The excuse that he thought it was a bundle or a dog, is entirely insufficient. He drove his train in full speed to the whistling-post, near the child, before sounding any alarm, and then it was too late to stop. If he had sounded the whistle within half a mile of the child, she would, in all probability, have been aroused, and

his doubts would have been solved in favor of human safety. Not only was it his duty to have his engine under control, but it was doubly so, when he saw the object on a high trestle, where an accident would necessarily be dangerous to the train. His criminal negligence cannot be justified by his strong desire to make schedule time. It is not pretended that the train could not have been stopped, but appellant boldly claims that no duty of care or prudence devolved upon the engineer during the period of doubt; that such duty only arose after the engine was right upon the object, when it was discovered to be a human being.

The clear and simple issue properly presented to the jury was this : Would an engineer of ordinary care, seeing an object on the track a long distance ahead, check the speed of his train, and avoid injury in case it should prove to be a human being?

Plaintiff's instructions are correct. *Railroad Co.* v. *St. John,* 5 Sneed (Tenn.), 524; *Isabell* v. *Railroad Co.,* 60 Mo., 475 ; 2 Wood on Railroads, § 320, etc.

It is too well established, that even a trespasser on a railroad cannot be run upon or injured with impunity. *Railroad Co.* v. *McGowan,* 62 Miss., 682.

The doctrine of contributory negligence has no application, because : First, the trespass of plaintiff was not the proximate cause of the injury. That cause was the negligence of the defendant; a cause that arose without any concurrence on the part of plaintiff, who was unconscious of danger. By the use of ordinary care, the injury could have been avoided, after the danger became apparent. 4 Am. & Eng. Enc. L., 51, 52; *Jamison* v. *Railroad Co.,* 63 Miss., 33.

Secondly, the doctrine does not apply, because the plaintiff was only a child of seven years of age, *prima facie* incapable of contributory negligence. *Westbrook* v. *Railroad Co.,* 66 Miss., 560; *Vicksburg* v. *McLain,* 67 *Ib.,* 4. There was nothing to show that plaintiff was of exceptional capacity. The evidence establishes the contrary.

It was not train-time when plaintiff went on the trestle, and she had no reason to apprehend the approach of the train. It was on a trestle the public were in a habit of walking over.

Argued orally by *E. Mayes*, for appellant.

WOODS, J., delivered the opinion of the court.

Under the plea of the general issue, the railway company gave notice of its purpose to prove that, at the time of receiving the injury for which a recovery was sought, the plaintiff below, was lying upon the track of the railway of defendant, and that she was possessed of unusual precocity of judgment, and of discretion sufficient to make her presence upon the track a trespass, and was, in consequence thereof, guilty of contributory negligence. The evidence seems to fairly support the defense set up in the plea and notice.

This view leaves the litigation to hinge upon a single question, viz.: After seeing the girl on the guard-rail, did the engineer on the train do all in his power to avert the injury? To put it in another form: After seeing the girl, was the injury wilfully or wantonly inflicted? If this inquiry must be answered affirmatively, judgment should have gone for plaintiff below, but if not, the judgment should have been otherwise.

Being a trespasser, the engineer's duty to her was measured and covered by his abstention from wilful or wanton negligence; he was not bound to do every thing in his power to check or stop his train, until he saw the child and her peril. Until he saw the child and her peril, he owed her no other or greater duty than that due any trespasser whatever. Only when the engineer sees the trespasser is a child, is he brought under a rule of greater care and caution.

That the engineer is shown to have done all in his power to save the child and avert the injury, after seeing her to be a human being, is plainly apparent from his testimony. He

first saw the child when she raised her head, upon his whistling for the Georgia Pacific crossing, and he was then within about fifty yards of her. It is undisputed that the train, running then at twenty-five miles an hour, could not have been stopped by any human appliances in time to avoid the collision.

But it is contended (and this contention prevailed in the trial court) that when the engineer saw, at sufficient distance to have checked and stopped his train, what he thought was a dog, or a bundle, or something of that character, he, in contemplation of law, saw the child; that, seeing what appeared to him to be a dog or a bundle lying on the track, he was under obligation to check or stop his train, and examine and make sure what the seen object was.

It is to be said, first, that the engineer does not seem to have entertained any doubt as to the character of the object; he was not debating whether the thing lying on the track was or was not a human being. He appears, from the evidence, to first have had no thought that the seeming dog or bundle was a child when the actual knowledge of the horrible truth broke upon him, within fifty yards of the prostrate and motionless girl. Running at a high rate of speed, down a straight track, under a midsummer's afternoon sun, his vision rendered less clear by the glimmering radiation from the rails, it does not seem to us incredible that a small girl, lying flat on the track, was not at first seen to be a human being, and not a dog, or bundle, or something of that character.

The action of the court below, on the instructions for the respective parties, constrained the jury to hold the defendant company liable for the failure of the engineer to check or stop his train when he first saw an object, which he then thought to be something other than a human being, but which, at length, was discovered to be a child. The test of responsibility is, did the striking of the child by the train occur after the engineer had seen—not *might* or *ought* to have

seen—that is, *discerned* or *distinguished*, the girl.    Until the girl had been seen—discerned to be a human being—the engineer was under no obligation to the trespasser to check or stop his train, whatever may have been his obligation to the passengers who were being hauled by him.    When the engineer is made aware of the presence and peril of a trespasser, by seeing him, he will wilfully or wantonly do him hurt at the peril of his employer; but, until made aware of the presence and peril of the trespasser, there could not be wilful negligence or wanton misconduct toward the unrecognized, undiscerned trespasser.

The action of the court below in giving the second instruction asked by the plaintiff, and in refusing the fifth, sixth, eighth, ninth and tenth instructions asked by the defendant, was in conflict with the foregoing opinion, and the judgment is, therefore,

*Reversed, and cause remanded for a new trial.*