JOSEPH J. JOY, Admr., Appellant, *vs.* THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY, Appellee.

*Opinion filed April 23, 1914—Rehearing denied June 4, 1914.*

1. NEGLIGENCE—*when a railroad company is not bound to keep lookout for trespassers.* A railroad company owes a duty to keep a lookout at places where it has permitted the public to travel along or over its tracks for a considerable period of time and a considerable number of people have availed themselves of such use, and where the railroad runs through populous portions of a city, where people frequently go upon or pass over the tracks with knowledge of the company or for such length of time that the company is chargeable with knowledge, but the law casts no duty upon a railroad company to keep a lookout for trespassers on its tracks in the open country, remote from habitation and where it would not be expected that a man would be on the tracks.

2. SAME—*when duty arises to avoid injury on railroad tracks.* Where an accident occurs at a place where the railroad company is under no duty to look out for trespassers, the duty to exercise care does not arise at the moment an object on the track is discovered by the engineer, but it arises at the time the object is discovered to be a human being in a helpless or perilous position. (*Martin* v. *Chicago and Northwestern Railway Co.* 194 Ill. 138, distinguished.)

3. SAME—*question whether duty arises under the facts is one of law.* Where the law raises a duty, the question whether it was properly performed or not is one of fact, but whether, under the facts, the law raises a duty is a question of law.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of LaSalle county; the Hon. S. C. STOUGH, Judge, presiding.

263 — 30

R. A. GREEN, H. M. KELLY, and BUTTERS & ARM-
STRONG, for appellant.

BOYS, OSBORN & GRIGGS, (J. A. CONNELL, of counsel,)
for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

This suit was brought to recover damages for the death
of Joseph Hayes, who was struck by an engine of the
Chicago, Burlington and Quincy Railroad Company on its
tracks between Ottawa and the village of Dayton, on the
afternoon of November 9, 1907, and so injured that he
died shortly afterwards. At the time deceased was struck
he was lying with his head and one arm on the west rail
of the railroad track and his body extended west from the
track. The declaration alleged deceased was on the track
unable to care for his own safety and in great peril; that
defendant's servants operating the train knew of his pres-
ence on the track in time to have avoided injuring him by
the exercise of due care but wantonly and negligently ran
the engine against him and killed him. Another count al-
leged the defendant's servants were aware of the peril of
the deceased and wantonly and negligently ran against him.
Another count was similar, except it alleged that after de-
fendant's servants became aware of the peril of deceased
they negligently ran against and killed him. At the con-
clusion of the plaintiff's evidence the trial court directed a
verdict for the defendant. Plaintiff appealed to the Appel-
late Court for the Second District, and that court affirmed
the judgment and granted a certificate of importance, upon
which a further appeal is prosecuted to this court.

The fireman who was on the engine at the time the ac-
cident occurred was dead at the time of the trial and the
case substantially depends upon the testimony of Horace D.
Stedman, the engineer in charge of the engine that struck
Hayes. At the place where the injury occurred the railroad

track of appellee runs north and south. It was in the open country, remote from houses and highway crossings. The nearest railroad crossing was north of the place of injury in the neighborhood of a mile, in the village of Dayton, and the nearest railroad crossing south of the place of injury was about one and one-half miles. There was no house nearer the place than one-fourth mile, and there is no proof that at the place of the injury the track was used for travel or for any other purpose than that of appellee. The track was ballasted with cinders on a level with the top of the ties and extended on each side of the track, sloping down to a ditch on the west side, which was one or one and one-half feet below the ties. The engineer, who was seventy-nine years old at the time he testified and not then in the service of appellee, testified he first saw an object on the track when he was 80 or 100 rods south of it. A few days before he had seen an object on the track at the same place, and on stopping his train found it to be a bundle of waste paper out of a sand car. He thought this object was the same bundle of waste paper. No part of the body except the head and shoulders was visible from the engine until he got pretty close. The train consisted of an engine, baggage car and two coaches and was running about twenty miles an hour. After first seeing the object which he believed to be a bundle of waste paper he did not look at it again until the fireman told him it was a man. He immediately applied the emergency brake, shut off steam and sounded the alarm whistle, but was then too close to deceased to stop his train before striking him. When the train came to a stop the rear coach was opposite the body of deceased, which was lying on the west side of the track. There were no weeds or other obstructions on the railroad grade at the place where the deceased was struck.

Appellant insists the proof at least tends to show appellee's servants in charge of the engine were aware of the

presence of deceased on the track, and of his peril and danger, in time to have avoided injuring him; that with such knowledge, and in disregard of their duty, they negligently ran the engine against and upon the deceased. The engineer testified that when he first saw the object on the track he was from 80 to 100 hundred rods south of it and could have stopped his train before reaching it, but he did not become aware that the object was a man until too close to stop his train. Appellant concedes no duty rested upon appellee to anticipate the presence of deceased on the track or to keep a lookout to discover him in the first instance, but it is claimed that when the engineer saw an object on the track it was sufficient to put him upon inquiry as to what the object was, and it should have been submitted to the jury to determine whether appellee acted negligently, after seeing the object on the track, in not determining what it was in time to have stopped the train before striking the deceased.

It has been held by this court, and almost universally, that the law casts no duty upon a railroad company to keep a lookout for trespassers on its track in the open country, remote from public crossings, cities and towns. This is conceded and requires no citation of authority. Exceptions to this general rule are (1) places where the railroad company has permitted the public to travel along or over its track for a considerable period of time and a considerable number of people have availed themselves of such use, and (2) where the railroad runs through populous portions of a city, where people frequently go upon or pass over the track with knowledge of the company or for such a length of time that the company is chargeable with knowledge. Neither of the exceptions is involved in this case. If the engineer had not seen any object upon the track it would not be contended there could be any liability, for the general rule would apply that appellee owed no duty to keep a lookout for trespassers. The alleged liability is based

upon the claim that after the engineer saw an object on the track it became his duty to exercise reasonable care and diligence to determine what the object was, and it is claimed if he had exercised such reasonable care and diligence he could have discovered that the object was a man in time to have stopped his train before striking him.

Much reliance is placed upon *Martin* v. *Chicago and Northwestern Railway Co.* 194 Ill. 138, and some expressions are used in the opinion in that case which may appear to support appellant's position. That case is distinguishable from the one at bar, and such expressions were not necessary to support the conclusion reached in the case. In that case the engineer did not see the object on the track, but it was seen by the fireman when the engine was about 1400 feet distant from it. He did not discover it to be a man until the engine was within 360 or 380 feet of it, and he then notified the engineer. The testimony of skilled and experienced engineers was that the train could have been stopped within a distance of from 100 to 125 feet. The place of the injury was in the city of Chicago, where the track was elevated from 12 to 15 feet above the surface. The railroad company had maintained a station at that place up to about the time of the accident, which was reached by a stairway. The location and situation were such that any object on the track would necessarily excite more suspicion and apprehension as to what it was than would an object in the open country, remote from habitation, and where it would not be expected that a man would be on the track.

While the authorities are not all in harmony, the great weight of them is, that where an accident occurs at a place where the railroad company is under no duty to look out for trespassers, the question is not whether the engineer could see the object, but is whether he did see it and discover it to be a human being in time to stop his train and avoid the injury. The duty to exercise care does not arise at the moment an object is discovered, but arises at the

moment it is discovered to be a human being and to be in a helpless or perilous position. The most elaborate opinion upon this question to which our attention has been called is *Palmer* v. *Oregon Short Line Railroad Co.* 34 Utah, 466; 16 Am. & Eng. Ann. Cas. 229. · In that case the question in all its phases is discussed and a wealth of decisions of the various States cited and reviewed. The rule and the reason for it, as applied under varying circumstances shown by the evidence, will be found discussed in the following cases, in some at great length and where the facts make them applicable to this case: · *Norfolk and Western Railroad Co.* v. *Dunnaway,* 93 Va. 29; *Burg* v. *Chicago, Rock Island and Pacific Railway Co.* 90 Iowa, 105; *Missouri Pacific Railway Co.* v. *Prewitt,* 59 Kan. 734; *San Antonio and Aransas Pass Railway Co.* v. *McMillan,* 100 Tex. 564; *New York, New Haven and Hartford Railroad Co.* v. *Kelly,* 93 Fed. Rep. 745; *Craddock* v. *Louisville and Nashville Railroad Co.* 13 Ky. 18; *Louisville, Henderson and St. Louis Railroad Co.* v. *Hathaway,* 121 id. 666; *L., N. O. & T. Ry. Co.* v. *Williams,* 69 Miss. 631. ·

We do not think there was any question of fact, under the evidence, to be submitted to the jury. When the law raises a duty, whether it was properly performed or not becomes a question of fact, but whether, under the facts, the law raises a duty is a question of law. Under our view of the law no duty was imposed upon appellee until the engineer discovered the object on the track to be a man. It is not and could not be disputed that the engineer then did all he could to avoid the accident but was unable to do so. As the evidence did not tend to show negligence on the part of appellee in the performance of any duty it owed deceased, it was not improper to direct a verdict for appellee.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*