Louis Sary, by Mike Sary, Appellee, v. Peoria & Pekin Union Railway Company, Appellant.

Gen. No. 7,822.

Opinion filed January 28, 1928. Rehearing denied and opinion modified May 1, 1928.

BARNES, MAGOON & HORTON, for appellant.

JOHN E. CASSIDY, for appellee.

MR. JUSTICE BOGGS delivered the opinion of the court.

An action on the case was instituted in the circuit court of Peoria county by appellee, a minor by his next friend, to recover for injuries received by him in the switching yards of appellant.

The declaration originally consisted of three counts. A demurrer was sustained to one, another was withdrawn, leaving the count on which the cause was tried. That count alleges that appellant maintained what was called hump switching yards in the village of East Peoria; that "great numbers of workmen and other pedestrians proceeded daily upon and along the aforesaid Center street, and, to wit, the path that was a continuation thereof, in a northerly and southerly direction, upon and across the aforesaid gravity yards"; that appellant through its agents and servants had knowledge that pedestrians crossed over said yards, near the continuation of Center street; that in the exercise of due care and caution, appellee a minor aged 12 years proceeded in a southerly direction over said yards, where pedestrians were in the habit of crossing, and around the easterly end of a cut of three railway cars that were stationary on one of said tracks; that appellant, without giving any warning, caused a car to be kicked against the westerly end of said cut of cars, causing them to be pushed suddenly in an easterly direction against appellee, and that by reason of the wilful and wanton conduct of the agents and servants of appellant, appellee's left arm and shoulder were crushed alleging damages, etc.

To said declaration appellant filed a plea of the general issue. A trial was had, resulting in a verdict and judgment in favor of appellee for $13,500. To reverse said judgment, this appeal is prosecuted.

Appellant railway company is primarily engaged in terminal activities, and in the interchange of freight cars between the various trunk line carriers with which it has connections. Appellant's switching yards were originally constructed as hump or gravity yards, but about 1912 were changed to ordinary switching yards. Said yards are approximately a mile and a quarter long and a quarter of a mile wide. In the vicinity where the accident in question occurred, there are 42 tracks. The yards run approximately east and west, the extreme easterly end being near Washington street in East Peoria, and the westerly end running through Wellesley. Center street runs in a southerly direction from Washington street to a point about 450 feet north of said yards. There is also a stub street about one block long, south of said yards, called Center street. These two streets called Center street do not connect and do not extend across appellant's property. A path extends from the south end of Center street, southerly across what is known as the elevator track, to the north side of appellant's switch yards. About 100 feet south of the end of Center street is the embankment of what is called the elevator track, which branches out from the yards some distance east of Center street, and extends westerly to an elevator some distance west of the line of Center street. The rails of this elevator track are about seven feet above the general ground level. Between the elevator track and the yards proper is a field, which was being cultivated by the father of appellee. The path proceeds across this field, and to the switch yards of appellant. The north side of said yards is six and one-half feet above the ground level. Said path goes up to the first or north rail of the switch tracks where it ends. There appears to be a path running eastwardly along the outside of the north rail, and also in a westerly direction north of said rail. There is no path extending south across said yards. On the south side of appel-

lant's switch yards, in a projected line from Center street, is a ditch some 7 feet wide and 3 feet deep; beyond said ditch the ground ascends at an angle of 45 degrees to a height of some 16 feet. On the other side of this embankment there is a drop of some 3 or 4 feet to the right of way of the Lake Erie & Western Railway yards, which bound the entire southerly side of appellant's yards.

It is first contended by counsel for appellant that the court erred in overruling the motions made by it at the close of appellee's evidence and again at the close of all the evidence, to exclude the same and to direct a verdict in favor of appellant for the following reasons:

(a) That the evidence wholly fails to sustain the allegation that a path extended in a southerly direction from the south end of Center street "upon and across" said yards.

(b) That while the testimony of appellee and his witnesses is to the effect that some considerable numbers of persons passed along said pathway from Center street to appellant's yards, it fails to prove that these persons crossed said switch yards in any particular track or direction, and for the most part, fails to show that they crossed the yards at all.

(c) That the allegation that appellee "proceeded as a pedestrian in a southerly direction upon and over the said hump switching yards, where pedestrians were in the habit of crossing," etc., is not supported by the evidence.

(d) That the evidence does not tend to prove that the act of appellant railroad company in switching the cars in question was done either with wilful intention to injure appellee, or that its servants in charge of said work were guilty of such gross negligence as to evince a willingness to do injury.

On the first proposition, while the evidence, both on behalf of appellee and of appellant, clearly establishes

that there was a path extending from the south end of Center street to the embankment at the north side of appellant's yards, there is no evidence to the effect that it extended across said yards.

On the second proposition, the greater number of appellee's witnesses testified that the persons whom they saw passing in a southerly direction along said pathway were not observed by them after entering said yards. As to those persons whose line of travel was noted after reaching the yards, the greater number thereof proceeded east or west along the pathway at the north side of said yards. As to those persons whose line of travel was shown to be southwardly across said yards, the evidence discloses that their way would be blocked by cars standing on the tracks, and that they would pass around such cars, and in some instances crawl under them. There is no evidence to support the allegation that large numbers of persons crossed appellant's switch yards in a southerly direction.

On the third proposition, the testimony of appellee and of his brother Mike is to the effect that they had gone to appellant's yards, and to the open field adjoining the same on the north, for the purpose of picking up coal. The witness Gray, who testified on behalf of appellee, stated that he was also picking up coal in the yards; that he "looked up and saw a boy coming along the tracks. It was Louis Sary, the plaintiff here. He was on the outside of the first track, north of the first track and north from where I was. He was walking along with his hands in his pockets, going east. I did not see anybody else. * * * I saw Louie start across the tracks south. * * * He went across the tracks and out of sight behind the car, on the third track. He was about fifteen or twenty yards east of the path when he started to cross on kind of an angle." Appellee testified with reference to the cars that he passed around: "These cars blocked a point

directly south of that path, there was about a car on each side of the row of trees. I started to follow Mike around, kind of southeast.'' Appellee was not attempting to cross appellant's yards as a pedestrian, but was, according to the testimony of himself and his brother, looking for coal.

On the last proposition, the testimony on the part of appellee, his brother and Gray, being the only witnesses who testified in reference to what occurred at the time of said injury, is to the effect that when the cars were switched down to the three stationary cars, it caused a crash, and Gray testified that some coal fell off of one or more of the cars. They all testified that the stationary cars were moved about half a car length by the impact, that they heard no warning, and that there was no one on the cars that were being switched. The testimony on the part of appellant's witnesses is to the effect that certain of the cars they were handling were grain cars, and that they were handled in the ordinary way in which cars were handled in switching.

While appellee alleged due care on his part, no attempt was made to prove due care, and it is conceded by counsel for appellant that, if the averments of the declaration were otherwise proven, and if there were no serious errors in the rulings of the court on the admission of evidence, instructions, etc., the declaration would be sufficient to support the verdict and judgment; in other words, that said declaration sufficiently charges wilful and wanton conduct on the part of appellant, proximately resulting in the injury to appellee.

The evidence proves, and it is practically conceded by counsel for appellee, that appellee, prior to and at the time of his injury, was a trespasser, his purpose being to pick up coal from said yards, without any permission or license from appellant so to do. The evidence conclusively proves that the servants of appellant in charge of the switching in question did

not know of the presence of appellee, and did not even know he had been injured until the following day. That being the state of the record, and appellee being a trespasser, the only duty which appellant owed to him was not to wilfully or wantonly injure him.

It is not contended by counsel for appellee that the servants of appellant company, in charge of said switching, knew of appellee's perilous situation. There was therefore no intention of injuring him. This being the state of the record, it is necessary that the evidence tend to show that such switching operation was so recklessly done, and with such an obvious disregard of the safety of others, as to amount to proof of a willingness to do injury.

If there was recklessness, it must be shown by the evidence to have been such as to place a burden on appellant, through its servants, to ascertain whether there were persons in its yards who were likely to be injured, and to give warning to such persons, if there were such, before proceeding with the work, as is insisted by counsel for appellee.

In *Bremer v. Lake Erie & W. R. Co.*, 318 Ill. 11, the court in discussing the duty of a railroad company toward a trespasser on its tracks, at page 16, says:

"In *Illinois Central Railroad Co. v. Godfrey, supra*, it was held when a trespasser on the track of a railroad company is struck and injured by an engine, the company can be held liable only for wanton or willful injury or such gross negligence as evidences willfulness. * * * The distinction is clearly made that a defendant owes the duty of ordinary care to a trespasser known to be in danger, to avoid injuring him. If by the exercise of ordinary care injury can be avoided the defendant is liable for the failure to use such care, but to a trespasser whose presence or whose danger is unknown there is no duty to exercise ordinary care, though there is a duty not to injure him willfully or wantonly or by such gross negligence as evidences will-

fulness. The rule is stated in many of the cases cited that the defendant is not bound to anticipate the presence of trespassers on its property or to keep a lookout for them, and that its duty to exercise care to avoid injury to trespassers begins only when their presence is known.''

Counsel for appellant and for appellee both cite this case as giving a correct statement of the law applicable to the duty of a railway company to a trespasser on its tracks.

A mere naked license or permission to enter or pass over an estate will not create a duty or impose an obligation on the part of the owner to provide against the danger of accident. *Illinois Cent. R. Co. v. Godfrey*, 71 Ill. 500–507; *Illinois Cent. R. Co. v. Hetherington*, 83 Ill. 510; *Cunningham v. Toledo, St. L. & W. R. Co.*, 260 Ill. 589–595.

The record in this case shows that at times from 1,500 to 2,000 cars are handled through these yards in a day; that switching operations are in progress 24 hours in the day; that this accident occurred some time after sunset, and that there were 541 cars in the yards at that time.

In *Illinois Cent. R. Co. v. O'Connor*, 189 Ill. 559, the railroad had erected a wall along the line of its right of way to keep persons from its tracks. A boy crossed the wall and the tracks, for the purpose of swimming in Lake Michigan, and in recrossing the tracks about nine o'clock at night he was struck by a train. The principles there laid down are peculiarly applicable to the case here under consideration. The court at page 564 says:

''This court is committed to the doctrine that a railroad company, in the operation of its trains, owes no duty to a trespasser upon its right of way or tracks except that it will not wantonly or willfully inflict injury upon him, and we have frequently held that the

mere fact that signals required by statutes and ordinances are not given, even though 'those operating its trains may have knowledge of the fact that persons have been in the habit of crossing its tracks or walking upon them at places other than public crossings or public places, will not amount to proof of willful and wanton disregard of duty toward such trespassers.'' Citing *Illinois Cent. R. Co. v. Godfrey, supra.* The court at page 566 further says:

''It is true that some courts have held that where a railroad company has for a considerable length of time permitted the public to cross its tracks at given points without objection, it owes the duty of reasonable care toward those to using the crossing. *(Taylor v. Delaware and Hudson Canal Co.,* 113 Pa. St. 162; *Barry v. New York Central Railroad Co.,* 92 N. Y. 289; *Byrne v. Railroad Co.,* 104 id. 562; *Swift v. Staten Island R T. R. Co.,* 123 id. 645.) But as shown above, we have held, in accordance with the rule laid down by Elliott in his work on Railroads, (vol. 3, sec. 1252): 'Mere sufferance or passive acquiescence in the occasional use of the track between crossings does not necessarily amount to a license, and where nothing more is shown, one who so uses the track is a trespasser.' (Ibid. sec. 1248.)

''There is a line of decisions by this court holding, in effect, that even though a party may be upon the defendant's tracks or right of way without an absolute right to do so, * * * at a place on a public street or on the 'planked tracks adjacent thereto,' as in *Chicago, Burlington and Quincy Railroad Co. v. Murowski,* 179 Ill. 77; or where the evidence tended to show that the place of the injury was in a public street of the city, as in *Lake Shore and Michigan Southern Railway Co. v. Bodemer,* 139 Ill. 596, the company owes to persons at such places the duty of exercising reasonable care to avoid inflicting injury upon them, and that in such cases the failure to give required signals

may amount to wanton or gross negligence. But we are unable to see upon what principle the present case can be brought within the reasoning or decision in those cases. As we have before said, the plaintiff in this case was a trespasser. He was upon defendant's right of way and track, not upon any business with the defendant,—not by any right or claim of right,— but for his own convenience and pleasure.    *    *    *

"On the decisions first above cited, we are of the opinion that there was no evidence before the jury proving or. tending to prove that the defendant was guilty of gross negligence toward the plaintiff, and that the trial court erred in refusing the peremptory instruction to find for the defendant."

This case was cited and approved in *Neice v. Chicago & A. R. Co.*, 254 Ill. 595–603; *Cunningham v. Toledo, St. L. & W. R. Co., supra*, 596; *Bremer v. Lake Erie & W. R. Co., supra*, 16.

In *Joy v. Chicago, B. & Q. R. Co.*, 263 Ill. 465, the court in discussing the duty of a railway company with reference to trespassers, etc., at page 468, says:

"It has been held by this court, and almost universally, that the law casts no duty upon a railroad company to keep a lookout for trespassers on its track in the open country, remote from public crossings, cities and towns. This is conceded and requires no citation of authority. Exceptions to this general rule are (1) places where the railroad company has permitted the public to travel along or over its track for a considerable period of time and a considerable number of people have availed themselves of such use, and (2) where the railroad runs through populous portions of a city, where people frequently go upon or pass over the track with knowledge of the company or for such a length of time that the company is chargeable with knowledge. Neither of the exceptions is involved in this case.    *    *    *

"While the authorities are not all in harmony, the great weight of them is, that where an accident occurs at a place where the railroad company is under no duty to look out for trespassers, the question is not whether the engineer could see the object, but is whether he did see it and discover it to be a human being in time to stop his train and avoid the injury. The duty to exercise care does not arise at the moment an object is discovered, but arises at the moment it is discovered to be a human being and to be in a helpless or perilous position. * * * As the evidence did not tend to show negligence on the part of appellee in the performance of any duty it owed deceased, it was not improper to direct a verdict for appellee.''

The mere fact that appellee was a minor, on a declaration charging liability on account of wilful and wanton conduct, would not affect the decision as to the liability of appellant company. *Wabash R. Co. v. Jones,* 163 Ill. 167; *Heimann v. Kinnare,* 190 Ill. 156; *Illinois Cent. R. Co. v. O'Connor, supra; Illinois Cent. R. Co. v. Eicher,* 202 Ill. 556; *Bartlett v. Wabash R. Co.,* 220 Ill. 163; *Colby v. Chicago Junction Ry. Co.,* 216 Ill. App. 315.

Appellee failed to prove the allegations of his declaration, and appellee's evidence, taken as true, with all reasonable inferences to be drawn therefrom, and taken together with the aspect of the evidence of appellant most favorable to appellee, fails to disclose a state of facts which, if well pleaded, would entitle appellee to recover. The court therefore erred in refusing to exclude the evidence and direct a verdict in favor of appellant, at the close of appellee's evidence, and again at the close of all the evidence.

For the reasons above set forth, the judgment of the trial court will be reversed.

*Judgment reversed with finding of facts.*

We find as ultimate facts, to be incorporated as a part of the judgment herein:

(1) That appellee's evidence, taken as true, with all reasonable inferences to be drawn therefrom, and taken together with the aspect of the evidence of appellant most favorable to appellee, does not tend to prove that appellee, just prior to and at the time of said injury, was in the exercise of due care for his own safety.

(2) That the evidence of appellee, taken as true, together with all the reasonable inferences to be drawn therefrom, does not tend to prove that appellant, just prior to and at the time of the injury in question, was guilty of wilful and wanton conduct in the operation of its train or cut of cars.