## HILL v. BALTIMORE & O. R. CO.
### No. 8880.

Circuit Court of Appeals, Seventh Circuit.
Jan. 30, 1946.

Royal W. Irwin, of Chicago, Ill., for appellant.

Edward W. Rawlins, James F. Wright, and E. W. Lademann, all of Chicago, Ill. (Fay Warren Johnson, of Chicago, Ill., of counsel), for appellee.

Before EVANS, MAJOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

This appeal is taken from a directed verdict for defendant. Plaintiff sued to recover damages for injuries incurred in an accident at Taylorville, Illinois.

The complaint charged that while plaintiff, in the exercise of ordinary care for one of his age, intelligence and experience, was proceeding across defendant's tracks and between two standing box cars, defendant caused one of the cars to be moved to and against the other and thereby plaintiff was caught and crushed. It further alleged that defendant carelessly, negligently, wilfully and wantonly caused the box car to forcibly run into and against plaintiff; that defendant carelessly and negligently failed to keep a proper lookout for persons crossing the tracks and failed to give suitable notice and warning that the box car was about to be moved.

The facts. The tracks of the Baltimore and Ohio Railroad at the site of the accident ran in an easterly and westerly direction. Adjacent to and on the south side of the railroad tracks was the property of the Allied Mills. This included factory buildings, a cyclone wire fence with gate enclosing the company yard, and the ap-

purtenant sheds necessary for the loading and unloading of freight cars. There were double tracks. The tracks directly beside Allied Mills were switching tracks, and railroad cars frequently were placed there for the use of Allied Mills. The other rails were used daily by one train.

On March 13, 1944, plaintiff, then eleven years of age, accompanied by his dog and carrying newspapers in a magazine sack entered the property of Allied Mills. After passing under an overpass connecting two buildings, the boy walked north parallel to Allied Mills building. At the fence near the end of the property he moved through an open gate, down five wooden stairs and onto the first set of railroad tracks, and stepped between two freight cars which were stationary and separated by a distance of some five or six feet. Before emerging from between the cars he stopped and turned to watch a workman behind him who was handling chains on the elevator of the mill. The boy remained in that position for about twenty seconds when his dog barked but too late to prevent a moving car from clamping his arm in the couplings of the two cars. The couplings did not take but the arm was so severely injured it had to be amputated about four or five inches below the shoulder.

The route described was the usual one taken by the boy to deliver his evening newspapers. He followed this path north as often as three and four times per week; it was a short cut to a boy chum's house. He never walked south over the route. The balance of the week plaintiff crossed the tracks at Walnut Street which was protected with a railroad flasher light. Once beyond the premises of Allied Mills, there were three directions open to plaintiff. He could have gone either east or west beside the tracks or straight across. Directly north of the tracks, however, was a pile of grain doors. Its size varied from time to time. Usually the boy ran north straight across the tracks and around the end of the grain doors. There was no street on the other side and plaintiff would have to pass through a garden before emerging on his friend's street. There were no plankings across the rails. The stack of grain doors with its varying size necessitated a circuitous and a constantly changing passage over the rails. A photograph of the open gate, stairs, and a portion of the switching tracks shows a gathering of cluttered debris, both on the side and between the rails. It is undisputed that for at least six months prior to the accident persons passed both ways through the property of Allied Mills and over the defendant's rails. There were no signs on either the property of Allied Mills or the defendant's right of way warning persons not to trespass, and the boy had not seen any railroad workers before the accident nor had he been warned that the car was about to be moved. There is no evidence that defendant knew that any persons were accustomed to cross the track at the place where this accident happened.

■ While this action was brought in the Federal District Court, there is no federal question involved other than diversity of citizenship. As a consequence, the law of Illinois prevails. Both parties have recognized this by copious citations.

Plaintiff brings this appeal in reliance upon the theory that he was a licensee on a path created by general public use over the railroad right of way; that the defendant owed him a duty of care; and that sufficient evidence concerning defendant's negligence had been produced to warrant submission of the issue to the jury.

■ At its best, the route, without consideration of the threat of moving railroad cars, was a precarious and dangerous one. The court in directing the verdict was of the opinion that plaintiff was a trespasser or at most a naked licensee. To us it is clear that plaintiff failed to show that the place where the injury was received was a public highway, hence we cannot quarrel with the court's conclusion. The obstacles in the form of the grain doors and the general debris on the right of way make a contention that this was a well defined path in general public use untenable. Even if we consider the plaintiff a licensee with tacit permission to pass over the rails, the defendant was under no obligation to provide against threat of an accident. The general rule is that a railroad company is under no duty to exercise active vigilance to provide against injury to a trespasser on its tracks until his presence is known. Illinois Central R. Co. v. O'Connor, 189 Ill. 559, 59 N.E. 1098; Illinois Central R. Co. v. Hetherington, 83 Ill. 510; Cunningham v. Toledo, St. Louis & Western R. Co., 260 Ill. 589, 103 N.E. 594; Sary v. Peoria & Pekin Union R. Co., 248 Ill.App. 417.

In Illinois Central R. Co. v. O'Connor, supra, the plaintiff was struck by a car on

switching tracks while attempting to cross the tracks. In the summer bathers and fishermen on their way to and from Lake Michigan in Chicago passed over the tracks. The court held that the railroad was charged with notice of the persons crossing the tracks, but that it owed no duty to them as licensees except to refrain from wilfully and wantonly injuring them.

Plaintiff concedes that he had no legal right upon the premises of the defendant, but he argues that his facts must be classed with the recognized exception to the rule. That is, where the public has been allowed to pass over the tracks and the public has made use of such crossing, the railroad is under a duty of care to them. Joy v. Chicago, Burlington & Quincy R. Co., 263 Ill. 465, 105 N.E. 330. While we are aware of the necessity and humaneness of this exception, we must insist that like all exceptions it has its limitations and its applicability here is denied. The cases cited on this point by the plaintiff can be distinguished.

In Chicago, Burlington & Quincy R. Co. v. Murowski, 179 Ill. 77, 53 N.E. 572, planking had been laid across the tracks directly opposite the only exit of a large factory. Eighteen hundred employees daily crossed the railroad right of way. It was held that the railroad had notice of this fact and was obligated to exercise due care toward the plaintiff. The facts in the instant case are hardly analogous in view of the disparity in the number of persons crossing the tracks and the provision of an obvious path.

The fact situation in Bernier v. Illinois Central R. Co., 296 Ill. 464, 129 N.E. 747, likewise can be distinguished. There plaintiff was crossing the tracks via a well-defined and well-traveled cinder path in front of the block-long station in the city of Kankakee. It was held that defendant had acquiesced in the public's use of the path and was under a duty of care to those using the path. The dissimilarity with the facts in this case is instantly apparent. Other cases cited by the plaintiff on this point, we think, are inapplicable.

■ As to a trespasser or licensee the railroad was under no duty of care except to refrain from wilfully and wantonly injuring him. In attempting to cross the tracks on the day of the accident plaintiff saw no railroad men at work. He saw and heard no engine and though it was not established just what propelled the cars together, we think it permissible to presume that an engine was present as the motivating force. No bell was rung nor was a railroad man there to warn persons of the danger from moving cars. Was the absence of warning then a case of wilful and wanton conduct? We think not. It was never established that defendant was aware of plaintiff's presence on the tracks. As the defendant did not maintain a regular switching crew, the plaintiff did not attempt to purport knowledge to the defendant through its employees. Plaintiff instead has relied upon the theory that there was a path here in general public use. We have rejected this theory. It has not been shown that failure to ring a bell or post a guard on the cars was a violation of any railroad rule, city or state law. In view of the regularly protected railroad crossings at either end of the street, failure to warn a trespasser who is not known to be on tracks where switching is done irregularly does not constitute wilful and wanton conduct. Illinois Central R. Co. v. O'Connor, supra; Illinois Central R. Co. v. Eicher, 202 Ill. 556, 67 N.E. 376.

Plaintiff places great faith upon the relevancy of Bremer v. Lake Erie & Western R. Co., 318 Ill. 11, 148 N.E. 862, 41 A.L.R. 1345. Here it was admitted that plaintiff was a trespasser riding on defendant's train. The circumstances of each case determine the degree of negligence, and in the Bremer case the engineer's disregard of signals and operation of his train at a high rate of speed in a fog were held to be acts so grossly negligent as worthy to be submitted to the jury as an issue of wilful and wanton conduct. The trespasser was treated no differently than if he were not a trespasser but a member of the general public. In our case the plaintiff once established as a trespasser must be treated as one, and the question whether any duty toward him arises under the facts is a question of law and must be decided by the court. Joy v. Chicago, Burlington & Quincy R. Co., supra.

■ In view of our rejection of plaintiff's contention that a well-defined public path crossed defendant's rails, there is little weight to the argument that defendant was guilty of active negligence. Active negligence is the doctrine that a property owner may be liable to a licensee or a trespasser for affirmative acts of endangering roadways or the licensee. Considerable stress

94

was laid upon two pertinent annotations, 49 A.L.R. 778 and 156 A.L.R. 1226. A general comment in the later annotation says: "While the purpose of the doctrine is a laudable one, the difficulties in drawing a line between active and passive negligence make it an unsatisfactory means of reaching the desired end." The true test would seem to be "whether he has acted as a reasonably prudent man would act in view of the probability of injuries to others." 156 A.L.R. 1234. In other words, were there grounds for anticipating another's presence? In the situation here appearing we do not believe the defendant could have been expected to anticipate the plaintiff's presence on the tracks between the cars.

■■ Was the evidence as to whether this was a wilful and wanton injury sufficient to make it a jury issue? The answer must be in the negative. It is a question of fact for the jury if it appears that construction of the evidence with all reasonable inferences in favor of the plaintiff substantiates his claim. Conversely, it is a question of law where the evidence is undisputed and the only reasonable inference to be drawn is contra to the cause of action. Morgan v. New York Central R. Co., 327 Ill. 339, 158 N.E. 724; Sary v. Peoria & Pekin Union R. Co., supra; Gately v. Chieago & Eastern Illinois R. Co., 7 Cir., 138 F.2d 222.

For the reasons stated, the judgment of the District Court is affirmed. It is so ordered.