## GUESS v. BALTIMORE & O. R. CO.
### No. 14285.

United States Court of Appeals
Eighth Circuit.
Oct. 24, 1951.

William R. Kirby, St. Louis, Mo. (Abraham Davis, St. Louis, Mo., on the brief), for appellant.

F. W. Schwarz, St. Louis, Mo. (Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, Mo., on the brief), for appellee.

Before SANBORN, JOHNSEN, and RIDDICK, Circuit Judges.

SANBORN, Circuit lJudge.

The trial of this action resulted in a directed verdict for the defendant (appellee) at the close of the plaintiff's (appellant's) evidence. This appeal is from the judgment entered on the verdict, the plaintiff contending that the District Court erred in granting the defendant's motion for a directed verdict.

The action was brought to recover for personal injuries allegedly caused by the negligence and willful and wanton misconduct of the defendant. The plaintiff's claim is that on July 4, 1947, at about two o'clock A.M. (standard time), while he was lawfully and in the exercise of due care for his own safety crossing

the defendant's tracks in the vicinity of Bowman Street in the City of East St, Louis, Illinois, a freight train of the defendant located on the tracks was caused to start up without warning and as a result the plaintiff was injured. The complaint charged the defendant with negligence and misconduct in failing to discover the plaintiff approaching and crossing its tracks and in failing to signal the starting of the train as required by a statute of Illinois. The defendant denied that it was guilty of negligence or misconduct, and specifically denied that the plaintiff at the time of the accident was in the exercise of due care for his own safety.

The facts which gave rise to this controversy, as disclosed by the record, are, in substance, as follows:

The plaintiff in 1947 lived with his family at 332A Exchange Avenue, East St. Louis, Illinois, adjacent to the tracks of the Pennsylvania Railroad. There are four or five such tracks, and east of them are five tracks of the defendant. The tracks are, roughly, parallel and extend north and south.

Exchange Avenue, which runs east and west, crosses the tracks of both railroads. A block south of Exchange Avenue and parallel to it is Bowman Street, which "dead-ends" on each side of the tracks. There is a pathway between the tracks of the Pennsylvania Railroad and those of the defendant in the vicinity of Bowman Street. The defendant's tracks are laid upon an embankment or fill. A path leads up the embankment from Bowman Street, where it ends on the east side of the embankment. The pathway crosses the defendant's tracks as well as those of the Pennsylvania Railroad. The pathway was not a public thoroughfare or grade crossing, but was used by pedestrians for their own convenience without objection from the defendant.

On the night of July 3, 1947, the plaintiff worked until midnight. When he reached his home, he found that his wife was away. After about an hour or an hour and a half, he crossed the tracks to look for her at the home of his sister-in-law, which was near Bowman Street, east of

the railway embankment. He found his sister-in-law out, talked to her children for about ten minutes, and then started home, walking toward the railroad embankment at Bowman Street. He then noticed that a freight train had stopped upon the most easterly of the defendant's tracks. This train had arrived after he had crossed the tracks in going to the home of his sister-in-law. Before he reached the embankment on the way to his own home, he met his sister-in-law and her husband, and they talked for about ten minutes. He then proceeded to the pathway which led up the embankment and across the defendant's right-of-way at Bowman Street, and followed the path to the top of the embankment. He looked for one of the crew of the train which blocked the pathway, intending to ask him how long the train would be there, but no one was in sight. He could not see either end of the train, but saw that it blocked Exchange Avenue to the north. The train had not moved from the time he first saw it. The night was quiet, clear, dark, and dry. There were no lights at that particular place. He listened for a signal, but heard none. He was in a hurry to get home. After he listened, he walked between the cars to climb over the coupling. Using his own words: "I reached up and got hold to one of those ladders and climbed up to go over the coupling. I was just about across except getting down when the train jerked up, or started up, and it jerked me loose from the ladder, my hand came loose and I fell on my back. The wheel caught my right arm." He heard no bell or whistle sounded at any time. He was thrown off on the west side of the track.

He had crossed the defendant's tracks on this same pathway many times before and had seen other people cross the tracks at that place in the daytime and the nighttime. He had on several occasions previously crossed between cars of standing trains. If there were any of defendant's employees present, he would ask whether the train would be standing there long, and if he was told it would be there five minutes or more he would climb through,

without objection from defendant's employees. He had "lots of times" seen other people in the neighborhood going through the trains as he did. He could have gone home by way of Exchange Avenue where there were crossing gates, or he could have walked down to St. Clair Avenue and gone through the underpass over which the tracks were laid. The underpass was two blocks away, and, in order to reach his home by that route, he would have had to walk two blocks south, about a block west, and north two blocks. The only train on the railroad embankment was the train through which he attempted to pass.

It was customary for standing trains to signal by bell or whistle before starting. A statute of Illinois (now Section 61, Chapter 114, R.S.Illinois 1949) imposed a civil penalty upon any railroad engineer who started his train in any city without ringing the bell or sounding the whistle a reasonable time before starting.

The testimony of the plaintiff as to the existence of the pathway across the defendant's tracks, its frequent use by pedestrians over a long period of time, and the occasional passing of pedestrians between the cars of standing trains, was corroborated by other witnesses. Two witnesses who were in close proximity to the point where the plaintiff passed between the cars of the train and who said they were watching him at the time, testified that they heard no bell or whistle before the train started. There was no affirmative evidence that the engineer signaled before starting the train.

In granting the motion of the defendant for a directed verdict at the close of the plaintiff's evidence, the court said: "The Court does not believe that the plaintiff has established a submissible case, that the evidence does not tend to show that the defendant is liable in this case. The plaintiff was on this property, he was a trespasser, was guilty of contributory negligence that proximately caused the injury * * *."

The defendant contends that, under Illinois law, a railroad company owes no duty to persons using a pathway such as that in suit, except to refrain from wantonly or willfully inflicting injury upon them.

There is, however, apparently a conflict of Illinois authority upon that question. See the opinion of Judge Lindley in Sperry v. Wabash R. Co., D.C.E.D.Ill., 55 F.Supp. 825, 826–828, and compare Hill v. Baltimore & Ohio R. Co., 7 Cir., 153 F.2d 91, 93. We We shall assume, without deciding, that, under the law of Illinois, the defendant owed the duty of exercising ordinary care to avoid injuring those who for their own convenience crossed its tracks by means of the pathway in suit. Apparently, in referring to the plaintiff as a trespasser, the trial court considered that he was such at the time he was attempting to pass over the bumper between the cars of defendant's train.

■ The plaintiff asserts that the question whether the failure of the defendant's engineer to give the statutory warning signal amounted to willful and wanton misconduct was a question of fact for the jury. Contributory negligence, under Illinois law, is ordinarily no defense to such misconduct. Baltimore & Ohio R. Co. v. Felgenhauer, 8 Cir., 168 F.2d 12, 18; Illinois Central R. Co. v. Leiner, 202 Ill. 624, 67 N.E. 398.

In a recent decision of this Court in a personal injury case governed by Illinois law, Gulf, Mobile & Ohio R. Co. v. Freund, 8 Cir., 183 F.2d 1005, 1010, we said: " * * Proof of the violation of a statute or ordinance is proof of negligence but not of wantonness. Bartolucci v. Falleti, 382 Ill. 168, 46 N.E.2d 980, 984; Provenzano v. Illinois Central R. Co., supra [357 Ill. 192, 191 N.E. 287]. Proof that appellant violated Illinois law concerning the construction and maintenance of the crossing or proof that it violated the law of the State with reference to sounding the crossing alarm is not sufficient to take to the jury the issue of wanton conduct in the situation shown by the evidence in this case."

■ Assuming that the jury in the instant case reasonably might have inferred that defendant's engineer failed to give the statutory warning signal before starting his train, that would, we think, in the circumstances disclosed by the evidence, have sustained nothing more than a finding of negligence.

In support of plaintiff's contention that the issue of his contributory negligence was one of fact for the jury, the plaintiff relies heavily upon the case of Lerette v. Director General of Railroads, 306 Ill. 348, 137 N.E. 811. The facts in the Lerette case are stated by the Supreme Court of Illinois as follows, page 813 of 137 N.E.: "About 1 o'clock a. m. Sunday, September 29, 1918, Louis Lerette, appellee, approached the tracks of the Chicago, Burlington & Quincy Railroad Company at Creve Coeur street, in the city of LaSalle. There are four tracks at this point. The north track is a switch track, known as the 'house track.' When appellee reached the crossing, he found the house track blocked by a long string of freight cars. There were cars as far as he could see in each direction. He waited for a few minutes, but the cars did not move. Then he sat down at the side of the street, made, lighted, and smoked a cigarette, and then investigated to see if the string of cars was likely to be moved soon. He had waited for about 20 minutes, and during that time he had not seen or heard an engine and the cars had not moved. This crossing was not used much after midnight, and frequently cars stood upon the crossing from midnight until morning. After satisfying himself that the string of cars was not going to move, appellee began to climb over the bumper between two of the cars. Just as he was getting onto the bumper, the string of cars without warning was jerked suddenly, and appellee fell backwards, and the wheel ran over his right leg, crushing it so that it had to be amputated."

The Lerette case reached the Supreme Court of Illinois after the verdict and judgment in Lerette's favor had been affirmed by an intermediate appellate court of Illinois. That fact was stressed by the Supreme Court of Illinois in referring to its limited right of review. If the facts in the instant case were substantially identical with those in the Lerette case, the latter might well be considered controlling authority with respect to the question of contributory negligence being an issue of fact for the jury.

In the Lerette case the crossing was a public grade crossing which was not used much after midnight, and where freight cars frequently stood from that time until morning. Lerette did not immediately attempt to pass between the cars, but waited for about twenty minutes at the crossing and investigated to see if the string of cars was likely to be moved soon. He satisfied himself that they were not to be moved.

In the instant case, the crossing was not a public one in any ordinary sense, but a pathway used by pedestrians to cross the defendant's tracks, without the defendant's objection. There was no evidence that cars blocked the pathway for long periods of time. The tracks were extensively used. There were at least two safe ways by which the plaintiff could have returned to his home, one by way of Exchange Avenue where there were gates at the crossing, and another by way of the underpass at St. Clair Avenue. All that the plaintiff did for his own safety upon reaching the freight train, which had only recently pulled in, was stop and listen before attempting to pass between the cars. He made no investigation to ascertain whether the train was likely to move. He obviously took an unwarranted chance when he attempted to climb over the bumper between two of the cars. That he thus contributed to the happening of the accident seems obvious. The evidence that the plaintiff and others had previously passed between cars of the defendant in following the pathway in suit, did not, in our opinion, make the railroad's equipment any part of the way across its tracks or amount to an implied invitation to pass between its cars on any and all occasions. We think the plaintiff in passing between the cars, under the circumstances disclosed by the evidence, was acting at his own peril and was guilty of contributory negligence as a matter of law.

It is, of course, possible that if this case were before the Supreme Court of Illinois, it might hold that the question of the plaintiff's contributory negligence was a question of fact for the jury. It must be remembered that this Court is not a state appellate court, and establishes no rules of

law for any state. All that we can hope to do in a diversity case governed by state law is to see that the final action of the trial court does not result from a clear misconception or misapplication of the law of the state. See Russell v. Turner, 8 Cir., 148 F.2d 562, 564. We think that the result reached by the District Court in the instant case does no violence to any settled rule of Illinois law.

■ If this case had been submitted to the jury upon the plaintiff's evidence, and had resulted in a verdict in his favor, it would, in our opinion, have been the duty of the District Court to set it aside. Therefore, we conclude that the court did not err in directing a verdict for the defendant at the close of the plaintiff's case. See Slocum v. New York Life Insurance Co., 228 U.S. 364, 369, 33 S.Ct. 523, 57 L.Ed. 879; Gunning v. Cooley, 281 U.S. 90, 93–94, 50 S.Ct. 231, 74 L.Ed. 720. We think, however, that it is the better and safer practice, in the trial of cases such as this, to defer a ruling upon the motion for a directed verdict until both sides have finally rested.

The judgment appealed from is affirmed.