HARRY CUNNINGHAM, Defendant in Error, *vs.* THE TO-LEDO, ST. LOUIS AND WESTERN RAILROAD COMPANY *et al.* Plaintiffs in Error.

*Opinion filed December 17, 1913.*

1. RAILROADS—*mere licensee has no greater rights than a trespasser.* The mere fact that a railroad company, after putting in a crossing outside of the limits of a village and not on any public street or highway, in order to permit the delivery, by teams, of material for a coal washer being erected upon the land of a coal company, acquiesces in the occasional use of the crossing by persons for their own convenience, does not impose upon the company any duty toward such persons greater than it owes to trespassers, as they are, at most, mere licensees, and the only duty which the company owes to them is not to willfully or wantonly injure them.

2. SAME—*what evidence not admissible in action for injury at a private crossing.* In an action against a railroad company for damages for injuries received by the plaintiff while attempting to use for his own convenience a private crossing not within the limits of the village nor upon any public street or highway, evidence as to the use formerly made by the public of another crossing some six hundred feet away, and of the use of the railroad tracks by persons walking along them laterally, is not admissible.

FARMER and CRAIG, JJ., dissenting.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Madison county; the Hon. W. E. HADLEY, Judge, presiding.

C. E. POPE, and BURROUGHS & RYDER, (CHARLES A. SCHMETTAU, of counsel,) for plaintiffs in error.

WEBB & WEBB, and GEERS & GEERS, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The Appellate Court for the Fourth District affirmed a judgment of the circuit court of Madison county for $8000 on account of personal injuries suffered by the defendant in error, and the record has been brought before us by a writ of *certiorari.*

The defendant in error, Harry Cunningham, a boy eight years old, was run over on September 30, 1906, by a locomotive of the Toledo, St. Louis and Western Railroad Company drawing a passenger train over the track of the Illinois Central Railroad Company near the village of Glen Carbon, and in consequence his right foot had to be amputated. He brought suit by his next friend against both railroad companies, and in the two counts which the declaration contained charged that the Illinois Central Railroad Company had constructed and maintained at the intersection of its railroad with a certain highway or passageway open to the public and extending from a certain street in the village of Glen Carbon across the railroad to and beyond a certain coal washer, a crossing, which had been placed in convenient condition for a passageway for vehicles and pedestrians, had been held out to the public as a public crossing and had been used largely by the public upon the invitation and with the knowledge of the railroad company, which had reason to expect persons to be upon the crossing at any time, and that the Toledo, St. Louis and Western Railroad Company so negligently drove a locomotive attached to a train of cars along the railroad and upon the crossing, without giving any warning of its approach, that it ran against and over the plaintiff and injured him.

At the close of the evidence the defendants asked for an instruction directing a verdict in their favor, the refusal to give which is assigned as error.   On this motion the evidence is to be taken in its most favorable aspect to the plaintiff and all conflicts are to be resolved in his favor. So viewed, the evidence tends to show the facts as follows:

The tracks of the Illinois Central railroad extend east and west through the village of Glen Carbon.   The place of the accident was about a quarter of a mile east of the station and was outside and east of the corporate limits of the village.   On the north side of the railroad, coming from the east, parallel with the railroad, was a public highway, which about opposite the place of the accident began to diverge to the north-west, getting farther away from the railroad, and led down to the main street of the village. Between the railroad and the highway was a ditch.   The ground immediately south of the railroad was owned by the Madison Coal Corporation, which a few months before the accident had begun the erection of a coal washer south of the track, and the railroad company at the same time made certain changes in its tracks there.   The village was on the north side of the railroad, and there were no streets or public highways south of the railroad track and only three or four houses south of the track.   In the spring of 1906 north of the washer and between it and the public road were the main track and two side-tracks of the railroad.   In order to haul machinery and material to the washer it became necessary to have a crossing over the railroad, and the railroad company, at the request of the coal company, put in a crossing over its tracks a few feet west of the washer by spiking a two-inch plank, twelve or fourteen feet long and a foot wide, to the ties on each side of each rail and filling in between the ties with cinders.   A wooden culvert was also built at the ditch, and teams and wagons were thus enabled to go from the highway across the railroad to the washer.   The St. Louis Pressed Brick

Company owned the land south of the Madison Coal Corporation's land south of the railroad, and the three or four houses south of the railroad were on its land. Grocers' and butchers' wagons used the crossing near the washer to deliver purchases at these houses, a funeral from one of them went over this crossing, and, besides the use made of the crossing in connection with the business of the coal corporation, anybody having occasion to go to or from these houses used the crossing without any objection on the part of the railroad company. There was a track made by the teams and wagons from the highway over the crossing, but there is no evidence tending to prove the existence of a public highway there. There was no evidence of intent to dedicate a highway, no acceptance by any public officer and no prescriptive use by the public. The defendant in error and his brother, two years younger, having attended a ball game in the afternoon a short distance north-west of the station, were returning to their home, which was across the highway north of the washer. They walked on the railroad track from the station east to the crossing near the washer, where a freight train was passing going east on the north track. A short distance east of the crossing the track curved to the north. While the boys were standing on the crossing south of the freight train, waiting for it to pass, the passenger train came around the curve from the east without giving any warning and ran over the defendant in error, causing the injuries complained of.

If the defendant in error was upon the track only as a licensee or as a trespasser his counsel concede that plaintiffs in error owed him no duty except not to injure him willfully or wantonly or knowingly. There is no evidence and no charge in the declaration of willfulness or wantonness, and therefore, unless there is evidence that the defendant in error was upon the track, as is claimed by his counsel, by the implied invitation of the railroad company,

the instruction directing a verdict for defendants should have been given.

It was said in *Pauckner* v. *Wakem,* 231 Ill. 276, that there is a well defined distinction between a mere licensee and one who comes upon the premises of another by invitation, express or implied, and that to come upon the premises under an implied invitation means that the visitor is there for a purpose connected with the business in which the occupant is engaged or which he permits to be carried on. The same thing is said in *Purtell* v. *Philadelphia and Reading Coal Co.* 256 Ill. 110, and the same rule is followed in *Franey* v. *Union Stock Yards Co.* 235 Ill. 522. In *Plummer* v. *Dill,* 156 Mass. 426, the plaintiff was injured by striking her head upon a projecting sign on a post at the corner of a landing in the defendant's building. She did not go there to transact any business with any occupant of the building but simply for her own convenience, to inquire about a matter which concerned herself, alone. The court, assuming that it was the duty of the owner to keep the entrance, stairway and halls of the building reasonably safe for persons using them on an invitation, express or implied, that he negligently permitted them to be unsafe, that his negligence caused the injury to the plaintiff and that she was in the exercise of due care, held that she was a mere licensee and could not recover for her injuries. It was said that "one who puts a building or part of a building to use in a business and fits it up so as to show the use to which it is adapted, impliedly invites all persons to come there whose coming is naturally incident to the prosecution of the business. If the place is open and there is nothing to indicate that strangers are not wanted, he impliedly permits and licenses persons to come there for their own convenience or to gratify their curiosity. The mere fact that premises are fitted conveniently for use by the owner or his tenants and by those who come to transact such business as is carried on there, does not constitute

260 − 38

an implied invitation to strangers to come and use the place for purposes of their own. To such persons it gives no more than an implied license to come for any proper purpose." In *Larmore* v. *Crown Point Iron Co.* 101 N. Y. 391, it was decided that a person who entered on the defendant's premises to see if the defendant would give him employment was a mere licensee and that the defendant was not liable to him for an injury caused by the unsafe condition of the place. The defendant in error was not on the crossing for any purpose connected with the business of the railroad company or the coal company, but only for his own convenience in going from the ball game to his home. He was not there by the invitation of the plaintiffs in error.

Counsel for the defendant in error insist that the duty of the plaintiffs in error to the defendant in error was greater than that owing to a trespasser or a mere licensee because he was using the crossing in the same manner as the railroad company had for six months permitted the general public to use it in passing between the village on the north and the washer and dwelling houses on the south of the tracks. The question of the duty of a railroad company to persons walking upon or crossing its track by the mere acquiescence of the railroad company, not for the purpose of any business connected with the railroad but for their own convenience, has been frequently considered by this court, and the doctrine has been firmly established that the railroad company owes no duty in the operation of its trains to such persons, other than not to wantonly or willfully inflict injury upon them. In *Illinois Central Railroad Co.* v. *Godfrey*, 71 Ill. 500, we said: "This cause was tried in the court below and submitted to the jury, as manifested by the instructions given and refused, upon an erroneous theory, which was, that from the fact of the citizens of Decatur having been in the habit of passing and re-passing over the portion of the defendant's right of way

where the injury in question occurred, the plaintiff had acquired some right which affected the defendant's relation toward him, and that at the time of the accident he was in the exercise of a legal right.  It very materially affects the question of the respective duties and liabilities of the parties whether at such time the plaintiff was in the exercise of a legal right or not.  The right of way was the exclusive property of the company, upon which no unauthorized person had a right to be for any purpose.  The plaintiff was traveling upon defendant's right of way, not for any purpose of business connected with the railroad but for his own mere convenience, as a footway, in reaching his home on return from a search after his cow.  There was nothing to exempt him from the character of a wrongdoer and trespasser in so doing, further than the supposed implied assent of the company arising from their non-interference with a previous like practice by individuals.  But because the company did not see fit to enforce its rights and keep people off its premises no right of·way over its ground was thereby acquired.  It was not bound to protect or provide safeguards for persons so using its grounds for their own convenience.  The place was one of danger, and such persons went there at their own risk and enjoyed the supposed implied license subject to its attendant perils. At the most there was here no more than a mere passive acquiescence in this use.  A mere naked license or permission to enter or pass over an estate will not create a duty or impose an obligation on the part of the owner to provide against the danger of accident.—*Sweeny* v. *Old Colony and Newport Railway Co.* 10 Allen, 373; *Hickey* v. *Boston and Lowell Railway Co.* 14 id. 429; *Philadelphia and Reading Railroad Co.* v. *Hummel,* 44 Pa. St. 375; *Gillis* v. *Pennsylvania Railway Co.* 59 id. 129." The doctrine thus announced has been followed in *Illinois Central Railroad Co.* v. *Hetherington,* 83 Ill. 510; *Blanchard* v. *Lake Shore and Michigan Southern Railway Co.* 126 id.

416; *Wabash Railroad Co.* v. *Jones,* 163 id. 167; *Illinois Central Railroad Co.* v. *O'Connor,* 189 id. 559; *James* v. *Illinois Central Railroad Co.* 195 id. 327; *Illinois Central Railroad Co.* v. *Eicher,* 202 id. 556.

In *Illinois Central Railroad Co.* v. *O'Connor, supra,* we said, on page 566: "It is true that some courts have held that where a railroad company has for a considerable length of time permitted the public to cross its tracks at given points without objection it owes the duty of reasonable care toward those so using the crossing. (*Taylor* v. *Delaware and Hudson Canal Co.* 113 Pa. St. 162; *Barry* v. *New York Central Railroad Co.* 92 N. Y. 289; *Byrne* v. *Railroad Co.* 104 id. 362; *Swift* v. *Staten Island Rapid Transit Railroad Co.* 123 id. 645.) But as shown above, we have held, in accordance with the rule laid down by Elliott in his work on Railroads, (vol. 3, sec. 1252): 'Mere sufferance or passive acquiescence in the occasional use of the track between crossings does not necessarily amount to a license, and where nothing more is shown, one who so uses the track is a trespasser.' (Ibid. sec. 1248.) There is a line of decisions by this court holding, in effect, that even though a party may be upon defendant's tracks or right of way without an absolute right to do so, yet where the place 'has been openly used jointly by the railroads and the public,' and where, from the evidence, the ownership of the place is left in doubt, as in the case of *Chicago and Alton Railroad Co.* v. *O'Neil,* 172 Ill. 527; or at a place on a public street or on the 'planked tracks adjacent thereto,' as in *Chicago, Burlington and Quincy Railroad Co.* v. *Murowski,* 179 Ill. 77; or where the evidence tended to show that the place of the injury was in a public street of the city, as in *Lake Shore and Michigan Southern Railway Co.* v. *Bodemer,* 139 Ill. 596, the company owes to persons at such places the duty of exercising reasonable care to avoid inflicting injury upon them, and that in such cases the

failure to give required signals may amount to wanton or gross negligence."

The last three cases cited in the foregoing quotation are relied upon by counsel for the defendant in error here, but as shown in the quotation they are distinguishable. The *Bodemer case* is distinguished in *Wabash Railroad Co. v. Jones, supra*. In the *O'Neil case* the evidence left the railroad company's ownership of the place where the accident occurred in doubt. Each count of the declaration charged that the injury was done wantonly and willfully, and it was held that the evidence tended to sustain the finding of the jury that the injury was wantonly and willfully inflicted. In the *Murowski case* the railroad company maintained tracks immediately adjacent to and parallel with the street which had been kept planked like a street crossing for eleven years. The south track was within three or four feet of the fence bounding the McCormick Reaper Works, and the only entrance to the reaper works was through a large gate just south of the tracks. At least 1800 men crossed the tracks and entered the gate every morning, and men seeking employment were accustomed to congregate on the tracks in front of the gate each morning and remain there several hours for the purpose of being employed by those in charge of the reaper works, whose custom it was to go outside the gate and employ men when they needed help. The plaintiff had gone there, in company with others, for the purpose of getting employment, and while standing in front of the gate for that purpose was struck by a passing engine and injured. He was there on business with the company for whose convenience the crossing was constructed, and whether he was rightfully there was held to be a question for the jury. In *Pittsburgh, Fort Wayne and Chicago Railway Co. v. Callaghan*, 157 Ill. 406, also relied upon by the defendant in error, it was not claimed that the plaintiff was a trespasser. He was going from one of his employer's buildings to another in the usual way, across

some railroad tracks. It was not contended that he was not rightfully on the premises, and the court held it was not material whether the place of the accident was a street or not, since it was not shown to have been the private property of the railroad company. In this case, as in those which have been cited, there was, at the most, no more than mere passive acquiescence. Permission to pass over an estate imposes no obligation on the owner to provide against accident. The defendant in error was on the railroad right of way not for the purpose of any business connected with the railroad company or the coal washer, for whose convenience, alone, the crossing was constructed. No right of way across the railroad was acquired merely because the railroad company did not see fit to enforce its rights and keep people off its property. There being no charge or evidence of wanton or willful injury the jury should have been instructed to find for the defendants.

The St. Louis Pressed Brick Company owned the property on both sides of the railroad east of the washer, having a plant on the north side of the tracks and a shale pit on the south side. For several years a crossing had been maintained over the railroad about six hundred feet east of the crossing at the coal washer to enable the brick company to use the shale pit, but about a year before the accident the brick company had ceased to manufacture bricks there or to use the shale pit. Several months before the crossing was put in at the coal washer the brick company's crossing had been taken out. Evidence was received, over the objection of the plaintiffs in error, as to the use of this crossing by the public. It was foreign to this suit and should have been excluded. So, also, the evidence in regard to the use of the railroad tracks by persons walking on them laterally should have been excluded.

The following instruction was refused:

"The court instructs the jury that if you believe, from the evidence, that plaintiff was on the railroad right of

way where he was injured simply by the acquiescence of the railroad company he was a mere licensee, and the defendant would owe him no other or greater duty as to his safety than if he were a trespasser on said railroad track, and the duty owed to a trespasser by a railroad company is simply to refrain from wantonly and willfully injuring him."

It should have been given. Instructions 16, 18, 23 and 24 stated correct propositions of law which should have been given to the jury.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

FARMER and CRAIG, JJ., dissenting.