Heater v. Chicago & Alton R. Co., 200 Ill. App. 331.

# Herbert Heater, Appellee, v. Chicago & Alton Railroad Company, Appellant.

## Gen. No. 6,160.

1. ROADS AND BRIDGES, § 11*—*when way by prescription over railroad right of way established.* To establish a public highway by prescription across a railroad right of way connecting the divided portions of a public street, the use of the public must have been adverse, under claim of right, continuous, uninterrupted, with the knowledge of the owner of the estate, and not with the mere acquiescence of the owner, and it must appear that a certain and well-defined line of travel existed over the property for fifteen years.

2. DEDICATION, § 9*—*when dedication of way over railroad tracks not established.* A dedication of a way over railroad tracks connecting the divided portions of a street is not established when it appears that the space is used for switching purposes and the railroad company has simply acquiesced in the use of the tracks as a way by the public.

3. ROADS AND BRIDGES, § 21*—*what does not constitute admission as to existence of street over railroad right of way.* A railroad company which, with other companies occupying parallel tracks, merely accepts an ordinance purporting to vacate a portion of a public street which the railroads' rights of way intersected, as a part of an arrangement by the city to elevate the tracks, does not admit that a street formerly existed over its portion of the right of way at the time of an injury to a pedestrian using such alleged street.

4. ROADS AND BRIDGES, § 23*—*when evidence insufficient to show existence of highway over railroad right of way.* In an action by a pedestrian for damages for personal injuries sustained by a pedestrian while attempting to cross railroad tracks at a point connecting two divided portions of a public street, over which the public had been accustomed to pass, evidence *held* insufficient to establish that plaintiff was injured on a public street.

5. RAILROADS, § 516*—*what duty owed to licensee on right of way.* A mere licensee has no greater rights on a railroad right of way than a mere trespasser, and the only duty the railroad company owes him is not to wilfully or wantonly injure him.

6. APPEAL AND ERROR, § 1300*—*when presumed that record contains all producible evidence as to existence of way across railroad right of way.* Where no street existed at the time of the estab-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

lishment of a railroad right of way, and there is no evidence in the record that the railroad company consented or acquiesced in the establishment of a way over its right of way connecting the divided portions of a public street, it will be presumed on appeal that the record contains all the evidence that could be produced tending to show such consent or acquiescence.

7. APPEAL AND ERROR, § 1802*—*when cause reversed without remanding.* Where the record in an action by a mere licensee for damages for personal injuries sustained while attempting to cross a railroad track presumptively contained all the evidence as to the existence of a way by prescription over the railroad right of way and it was insufficient to establish such way, and there was no evidence that the defendant wantonly or wilfully injured the plaintiff, *held* that the cause should be reversed without remanding.

Appeal from the Circuit Court of Will county; the Hon. ARTHUR W. DESELM, Judge, presiding. Heard in this court at the October term, 1915. Reversed with finding of facts. Opinion filed April 14, 1916.

J. L. O'DONNELL, T. F. DONOVAN and J. A. BRAY, for appellant; WINSTON, PAYNE, STRAWN & SHAW, of counsel.

KELLY & ORR, for appellee; PAUL E. PRUTSMAN, of counsel.

MR. JUSTICE CARNES delivered the opinion of the court.

September 27, 1905, appellee, Herbert Heater, then a boy thirteen years old, while walking across the tracks of the Chicago & Alton Railroad Company, the appellant, was struck by an engine backing towards him. His right leg was cut off below the knee and he was otherwise seriously injured. About eight years later, after he became of legal age, he brought this suit to recover for that injury, and filed a declaration of four counts, each drawn on the theory that he was struck while upon a public street of the City of Joliet.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

The charges in different counts are negligence, in general terms, in operating the engine upon said street, failure to comply with an ordinance of the city requiring that a man be stationed at the end of an approaching car to warn people of danger, and another ordinance of the city requiring the right of way of a railroad to be planked where it crosses a street, and suitable grade approaches at the crossing of streets. The general issue was pleaded. A jury trial resulted in a judgment for plaintiff for $1,500. The defendant prosecutes this appeal.

The controlling question is whether appellee was, at the time and place in question, upon a public street, whether he was rightfully at the place, or was a trespasser or a licensee to whom appellant owed no duty except not to wilfully injure him.

Appellant's railroad runs practically north and south through the City of Joliet. It was constructed in 1853. About 1887 the Santa Fe railroad was built with its right of way adjacent to and just east of appellant's. At the time of the accident there was, so far as a view of the ground would show, a public street known as Third avenue, beginning about three-quarters of a mile east of the right of way of these two railroad companies, traveled by vehicles and pedestrians to a point about half a block east of the Santa Fe right of way. Proceeding west there was no visible sign of a street, but there was an embankment from six to ten feet high upon which were laid, first, two tracks of the Santa Fe road, then five tracks of appellant's road, being appellant's two main tracks and three switch tracks. The right of way of the two roads combined was about one hundred fifty feet wide, perhaps one hundred feet used for these seven tracks. There were across this right of way marks of foot travel which some of appellant's witnesses say amounted to a beaten path connecting the two ends of Third avenue. The greater weight of the testimony

shows that there were footprints in various directions above and below, as well as on the space indicated by an extension of the street lines, with no visible defined path connecting the ends of the street. There had been no attempt by the railroad companies to treat the space as a street by way of marks, or signs, or grading, or planking between their tracks, or in any other manner. The space was used by appellant for switching purposes, as well as for the passage of its trains on its main line, and had the general appearance of a railway yard maintained and operated with no reference to public travel therein or thereon. No evidence was introduced that it had ever been dedicated as a public street by a plat or other writing. It is clear that it was not used, and could not be used, for the passage of vehicles, and also clear that there had been some foot travel across the right of way by people approaching from one side or the other on Third avenue, sometimes going straight across and sometimes up and down the tracks. But Third avenue at these adjacent points was not much traveled.

Appellee at the time in question was approaching the right of way from the east on Third avenue. He went up the embankment and proceeded to cross the tracks. After he had crossed the Santa Fe rails and reached appellant's switch track he says he saw an engine north of him headed north, and supposed it was moving north. In fact it was backing south pulling a string of cars from the north. He says he stumbled on one of the rails of appellant's switch track and fell, and the wheels of the tender passed over him cutting off his right foot; that he caught a bar of the engine underneath; that the engine backed south to or near Fourth avenue and then returned and came back nearly to Third avenue, when he attracted the attention of the crew by his cries and he was taken out. None of the engine crew saw him until after they

heard his cries. They stopped south of the south line
of Third avenue as they were going north and took
him from under the engine; found that his leg had
been cut off and went back south about one hundred
fifty feet and found the foot and signs of blood and
shreds of clothing at that point, and no signs of blood
on the track north of where the foot was found. Ap-
pellee was probably not within the extension of Third
avenue at the time he was injured, but as he testifies
that he was in that space at the time he was struck,
it is necessary to inquire whether Third avenue can
reasonably be held to extend across the right of way.
Appellee bases his claim that it did, on the argument
that there was a user that established a way by pre-
scription. There is some evidence, as we have before
said, that there was sufficient travel from east to west
on that space to make a visible beaten path, but the
decided weight of the testimony, even that offered by
appellee, is that there was no such visible beaten path.
It is true, we presume, that a prescribed right of
travel across a railway right of way might arise as
across other private property, but a prescriptive right
could not come from a permissive use. Mere travel
by the public is not sufficient to establish a prescriptive
right as a user. It must be under a claim of right by
the public and not by the mere acquiescence of the
owner. (*Palmer v. City of Chicago,* 248 Ill. 201.)
Neither can appellant be supposed to have dedicated
the strip to public travel because of mere acquiescence
in the use here shown for that purpose. (Id.) It is
clear, from the use that appellant devoted this space
to as a yard for switching cars, that it never intended
it to become a public street, and without that inten-
tion it cannot be said to have devoted it and dedicated
it to that use. (*City of Chicago v. Wildman,* 240 Ill.
215.) To establish a public highway by prescription
the use of the public must have been adverse, under
claim of right, continuous, uninterrupted and with the

knowledge of the owner of the estate. Occasional travel, such as is shown here, is not sufficient. (Id.) It must appear that a certain and well-defined line of travel has existed over the property for fifteen years. (*City of Chicago v. Galt*, 224 Ill. 421; *Doss v. Bunyan*, 262 Ill. 101, 108.)

Some time after the accident in question, track elevation ordinances were passed by the City of Joliet and certain portions of streets were vacated to enable appellant and several other railroad companies to elevate their tracks in accordance with the provision of the ordinance. Appellee offered in evidence an ordinance of the City of Joliet which purported to vacate a part of Third avenue beginning a few feet east of the Santa Fe right of way and ending a few feet west of appellant's right of way, with proof that appellant accepted this ordinance as a part of its arrangement with the city to elevate its tracks, and argues that this action of appellant is an admission that Third avenue did, before the vacation ordinance, extend across its tracks. Only the ordinance mentioned appears in the record here, but the acceptance offered in evidence was by appellant, the Santa Fe road, and four other railroads. We assume that it was a part of the general plan of track elevation in the city, and that this particular piece of ground was a comparatively small incident. It appears that some time before the accident the city authorities of Joliet had endeavored to make appellant prepare the crossing at that place for public travel, and appellant had successfully resisted. It may well be that any road, wishing to use this space in elevation of its tracks, would desire to relieve the situation of any claim, however unfounded, that there was a public street there. But whatever the motive may have been, it is not reasonable to suppose that appellant intended by joining in the acceptance of the ordinance to admit that there was a public street there. The transaction could only be given that effect and meaning by a

strained, technical construction, which might be well answered by saying that an admission by appellant some time after the accident that a street existed there at the time of the admission did not mean that it existed at the time of the accident.

We conclude that the record entirely fails to show that appellee was on a public street or highway at the time in question, and that the only reasonable construction of the evidence is that he was on the private right of way of appellant. It does not matter so far as the decision of this case is concerned whether he was there as a trespasser or a mere licensee. A mere licensee has no greater rights than a trespasser. The only duty which appellant owed him was not to wilfully or wantonly injure him. (*Cunningham v. Toledo, St. L. & W. R. Co.*, 260 Ill. 589). There is no charge in the declaration, nor claim in the argument, that the action of appellant was wilful and wanton, and we see no ground for such claim. The judgment must be reversed.

We see no reason to suppose that proof could be introduced on another trial showing the space in question to be a public street. There was no street there at the time appellant secured its right of way, nor could have been created there after the time without the consent or acquiescence of appellant, and we presume the proof in this record is all that could be produced tending to show such consent or acquiescence. Therefore the cause is not remanded.

*Reversed with finding of facts.*

Finding of facts. We find that the place where the injury occurred was not a public street and that the plaintiff in error was not guilty of the negligence charged in the declaration.