JEAN SABA, by His Next Friend, JOHN SABA, v. ILLINOIS CENTRAL RAILROAD COMPANY, a Corporation, Appellant.—85 S. W. (2d) 429.

Division One, July 9, 1935.*

Watts & Gentry for appellant; E. C. Craig and Chas. A. Helsell of counsel.

*NOTE: Opinion filed at September Term, 1934, April 17, 1935; motion for rehearing filed; motion overruled at May Term, July 9, 1935.

*Green, Henry & Remmers* for respondent.

HYDE, C.—This is an action for personal injuries, sustained when plaintiff was run over by a train on defendant's railroad in the State of Illinois. Plaintiff obtained a verdict for $15,000, and from the judgment entered thereon defendant has appealed.

Plaintiff, in this petition, alleged a long public user as a foot-path of the portion of defendant's track, where he was walking when injured. He charged primary negligence against defendant for failure to ring the bell, sound the whistle or give any warning of the approach of its train; for failure to have a headlight burning; and for running at an excessive speed. He further charged the failure to stop or slow down the train or to warn plaintiff, when defendant's crew "saw *or by the exercise of ordinary care on their part could have seen,* the plaintiff in a position of imminent peril of being struck by said locomotive and train of cars, in time thereafter, by the exercise of ordinary care on the part of said agents and servants in charge of the operation of said locomotive and train of cars, to have stopped said locomotive and train of cars, checked the speed thereof, sounded the whistle thereon, flashed the headlights of said locomotive thereon, or given warning of the approach of said locomotive and train of cars, and thereby have avoided striking and injuring the plaintiff." Defendant's answer stated the law of Illinois and alleged that defendant owed plaintiff no duty thereunder.

Plaintiff at the time of his injury on Sunday, November 2, 1930,

was sixteen years old. With a companion, Paul Rametta, then seventeen years old, he had been gathering hickory nuts about a mile south of Marion, Illinois, where he lived. Plaintiff, corroborated by Rametta, gave the following account of the accident. They re turned toward Marion on the concrete highway, until they reached a switch track of the Missouri Pacific, which crossed the highway and connected with defendant's tracks on the east. They left the highway at this point and walked along the Missouri Pacific switch to defendant's tracks. South of this point, where they reached defendant's right of way, there were three switch tracks. Defendant's engine, coupled to six coal cars and a caboose, was standing there. It had picked up two of the coal cars on one of these switch tracks. Rametta stopped to tie his shoe and plaintiff walked on down the track carrying the sack of nuts. Both boys said that the engine headlight had not been turned on then, but that they saw one of the trainmen carrying a lantern. It was between five and six o'clock, P. M. After he tied his shoe, Rametta got on the first car back of the engine, and rode the train toward Marion when it started up. Plaintiff walked about 200 feet down the track, after he passed the engine. He heard no bell or whistle nor any sound of the train, but the headlight was suddenly flashed on behind him and almost simultaneously the train struck him. Rametta got off the train, because he thought it was going too fast, at the point where plaintiff was lying at the side of the track, and almost fell over him. He got help, and plaintiff was taken to a hospital where his leg was amputated six or seven inches below the knee.

Defendant's evidence was that the headlight had been turned on for some time before they reached the switch; that it was on all the time they were switching; that the automatic bell ringer was turned on and the bell was ringing all the time the engine was moving; and that they blew the whistle when they started up toward Marion. Defendant's theory was that plaintiff fell under the train, in attempting to get on while it was in motion. The testimony of the engine crew tended to show that plaintiff never was on the track ahead of the train, but was, instead, at the side of the engine when it started up. Defendant's right of way had fences on both sides, from the Missouri Pacific switch up to or near the point where plaintiff claimed to have been struck, as shown by the pictures in evidence. It was about a quarter of a mile along defendant's track, from its junction with the Missouri Pacific switch, to the point where the track crossed the main street in Marion. Defendant's track, from its switch tracks north into Marion, as the pictures in evidence show, was an almost straight single main line track, with open fields on each side of this track until it reached the houses in the south part of town. Both passenger and freight trains ran over it daily.

Plaintiff points out the following evidence as to user of the track by the public:

"Jean Saba testified:

" 'I had observed people walking over that particular track at least once a week ever since I had known the railroad, four or five years. People had used it as a footpath during that time.'

"Paul Rametta testified:

" 'I walked on that Illinois Central track for about thirteen years before that. Every time I didn't have nothing to do, I would walk out that way. Other people used the track as a footpath as long as I can remember. The portion of the track where Jean was hurt was a portion of the track that I had seen people walk on and use for ten years.'

"John Saba testified:

" 'I have had occasion since 1922 to observe people walking over the Illinois Central track at the place where the accident took place. I was working at a mine and there was a train carying miners to work. There were four or five mines working there at Pittsburg. There were a couple of hundred men from Marion working there and when this train used to travel there every morning I saw a crowd of men on that piece of railroad and I also saw women and children using the track. They took that train off after the mine stopped. After that, about 1926, 1927 and 1928, they were operating a mine about six miles east of Marion and I used to pass there seven or eight times a day for loads of coal, and I saw people of all ages using that track and even men driving live stock on the track. That custom has continued up to this time. Children use it going to school and other people use it in going to Marion. . . . Everything except automobiles came up and down that track, live stock and everything. With my own eyes I saw men driving cattle up and down that track. I also saw horses and mules sometimes, I don't mean that I saw hundreds of people walking up and down the track at one time. I didn't say the whole 200 went up and down the track. Sometimes when three mines were working there might be twenty or twenty-five people. . . . I saw people walking on the railroad track every day just the same. School children used it at school time in the morning in going to school and on the way home in the evening. School was out around 4 or 4:30 or 5 o'clock. Sometimes I saw five or six school children, sometimes three or four using the track. I never counted them.'

"J. W. Blue testified:

" 'I know the location of the track where he is supposed to have been run over, and have known it for about twelve years. During that time it has been used by school children and other people as well every day walking on it. My estimate of the number of people that used it each day would be about five.'

"Ernie Davis testified:

" 'I have lived in Marion about thirty-five years. I know the stretch of the railroad track which Jean Saba has described as the place where he was hurt, and have known it close to thirty years. I have seen lots of people walk up and down it and I have walked up and down it myself for something like ten or twelve years, I guess. That is a kind of short cut for farmers coming to town, if they walk.'

"Charles Washburn testified:

" 'I know the stretch of track referred to by Jean Saba as the point where he was injured. It is about 300 yards from my house. I have lived at that house now a little over two years and I lived for twenty years about 400 yards from it. I am familiar with the use of it by the general public as a path. Over the twenty-year period, as long as the mines northeast and east of Marion were working, all the coal miners that were living in the east end of town caught the train and used that Illinois Central track down to the Missouri Pacific switch. They waited there to catch the train and they unloaded there at night to come back to their homes. After those mines shut down they cut off those miners. They didn't use them so much. But the number that travels varies with the season. During hickory nutting season, you can look out almost any time and see somebody one, two or three going down that railroad track. And, of course, there are seasons of the year there isn't so much travel. But during school season there are five children that go down there every morning and come back every evening on school days. The school children were using it around the 2nd day of November, 1930.'

"Ray Brewer, the fireman on the train involved, testified:

" 'I have seen trackmen on that track, section men, and fellows like that, working along the right of way at the particular point in question. I guess I have seen a few men walking along there once in a while.'

"Robert McRoy, the engineer in charge of said train, testified:

" 'We keep the bell ringing where there are crossings or where people walk on the track. I never saw people walk right on the track at the place where this accident took place. They have always walked on the side. I don't remember that I ever saw them walking in front of my train and then saw them get off the track. I never noticed that people used that part of the tracks any more than any other place on the tracks. The tracks were used all the way along there and clear up into town and beyond that.' "

■ Plaintiff must recover, if at all, because he has shown a cause of action under the law of Illinois. It seems that plaintiff's proof would be sufficient to make a jury case under the Missouri decisions, both on the charges of primary negligence and under our humanitarian rule. [Savage v. C., R. I. & P. Railroad Co., 328 Mo. 44,

40 S. W. (2d) 628; Crossno v. Terminal Railroad Assn., 328 Mo. 826, 41 S. W. (2d) 796, Id., 333 Mo. 733, 62 S. W. (2d) 1092; Wise v. C., R. I. & P. Ry. Co., 335 Mo. 1168, 76 S. W. (2d) 118.] It is not sufficient to make a jury case, under any of the charges of negligence, in Illinois, as we read the decisions of that State, because they hold that failure to give signals "even though those operating trains may have knowledge of the fact that persons have been in the habit of crossing its tracks or walking upon them at places other than public crossings or public places, will not amount to proof of willful and wanton disregard of duty toward such trespassers," since no duty ordinarily arises toward them until after their presence is actually discovered. [Illinois Central Railroad Co. v. O'-Connor, 189 Ill. 559, 59 N. E. 1098; Cunningham v. T., St. L. & W. Railroad Co., 260 Ill. 589, 103 N. E. 594 (where plaintiff was injured at a place which even vehicles used as a crossing).] Furthermore, "pleading and proof of a case under our humanitarian rule does not authorize a recovery under the law of Illinois." [Cox v. Terminal Railroad Assn., 331 Mo. 910, 55 S. W. (2d) 685; Smith v. Terminal Railroad Assn., 337 Mo. 95, 85 S. W. (2d) 425.]

In the Smith case, this court has exhaustively reviewed the decisions of the Illinois courts and quoted, therefrom, the rules they have laid down, applicable to this kind of a case. This court's conclusion was that "under the law of Illinois it is the general rule that a person using the tracks of a railroad company for his profit, convenience or pleasure is a trespasser or at most a mere licensee, and the only duty of trainmen to such person is the duty to not willfully or wantonly injure him after they know of his position of peril." The Supreme Court of Illinois has lately ruled, in a case similar to this one, that "to entitle him to a verdict" the plaintiff must prove "that they (the engine crew) saw (him) and knew of his peril in ample time to have warned him or slowed up or stopped the train before reaching him, but they willfully and wantonly, after having such knowledge, ran the train against him." [Morgan v. New York Central Railroad Co., 327 Ill. 339, 158 N. E. 724.] In a still later case the Illinois Supreme Court, citing the Morgan case, said, concerning the Illinois humanitarian rule, that "contributory negligence is not a defense to willful and wanton conduct. . . . In all cases charging willful and wanton negligence it is necessary to make proof of such negligence, and where there is no such proof no recovery under such charge can be had. [Morgan v. New York Central Railroad Co., 327 Ill. 339.]" [Little v. Blue Goose Motor Coach Co., 346 Ill. 266, 1. c. 272.] It is clear from the Illinois decisions that it is failure to act, after knowledge of a trespasser's presence on the tracks, which is held to constitute wanton and willful negligence.

This court also said in the Smith case that the cases, which it has

been. contended make exceptions to the general rule that no duty to look for persons on the track, at other than public crossings or public places, could all be classified, as follows:

"(1) In some of the cited cases it was ruled that if the use of the tracks was such that trainmen knew that in all probability persons were at the time and place on or near the tracks, it was their duty to keep a lookout and so move the cars or train that persons would not be injured, and the failure to do so was evidence of wantonness and willfulness.

"(2) In other cases the injury occurred where the railroad tracks on a street, adjacent thereto, or an extension thereof, and were laid so connected with the street that the right of way on which the tracks appeared to be a part thereof.

"(3) In other cases trespassers on a train were killed because of the failure of those in charge of the train to obey certain rules of the company. It was held that such failure was evidence of wantonness and willfulness."

The cases of use of the tracks, referred to in the Smith case as coming within this first classification, are not cases of use by the public of places on the tracks *on any part of the right of way,* without permission, in such a manner as would create a duty, under our Missouri cases, to be on the lookout for them on the theory that by permitting such use the company had waived its right to expect a clear track. They are cases concerning places, not on the private right of way of the railroad or places where the public had been invited by the company or places adjacent thereto, or which would likely be used by the public in reaching them, such as a station platform and vicinity or a path to it. [Bernier v. Illinois Central Ry. Co., 296 Ill. 464, 129 N. E. 747; Neice v. C. & A. Railroad Co., 254 Ill. 595, 98 N. E. 989; C. & A. Railroad Co. v. O'Neil, 172 Ill. 527, 50 N. E. 216 (place near packing house used jointly by its employees and railroad); P., Ft. W. & C. Railroad Co. v. Callaghan, 157 Ill. 406, 41 N. E. 909 (place not shown to be on private right of way); Bernier v. Illinois Central Ry. Co., 213 Ill. App. 530; Frechett v. Illinois Central Ry. Co., 197 Ill. App. 213.] At such places, the company must expect people and has the duty to be on the lookout. Therefore, it makes no difference whether or not a person injured at such a place was there on any business with the railroad.

Plaintiff bases its contention that its evidence here is sufficient to make a case for the jury, under the law of Illinois, upon Joy v. C., B. & Q. Railroad Co., 263 Ill. 465, 105 N. E. 330, which states:

"Exceptions to this general rule are (1) places where the railroad company has permitted the public to travel along or over its track for a considerable period of time and a considerable num-

ber of people have availed themselves of such use, and (2) where the railroad runs through populous portions of a city, where people frequently go upon or pass over the track with knowledge of the company or for such a length of time that the company is chargeable with knowledge."

Plaintiff contends that this case comes within exception Number 1, stated in the Joy case. Plaintiff refers also to the conjecture of this court in Teitsort v. Illinois Central Railroad Co., 322 Mo. 640, 15 S. W. (2d) 779, as to how the first exception in the Joy case might be applied by the Illinois courts. There are several reasons why plaintiff's contention cannot be sustained.

First. As this court said, in the Smith case, of these exceptions to the general Illinois rule stated in the Joy case, "there is no decision cited sustaining this statement of exceptions. Furthermore, the statement was unnecessary to a decision of any question presented by the record;" and literally construed these exceptions, which it states as *dictum,* are directly in conflict with the express holdings of such former cases as Illinois Central. v. O'Connor, supra, and Cunningham v. T., St. L. & W. Railroad Co., supra, and cases therein cited. The Joy case was like Voorhees v. C., R. I. & P. Railroad Co., 325 Mo. 835, 30 S. W. (2d) 22, where a man was lying on the track and the engineer, although he could make out an object, could not tell that it was a man.

Second. In the later Morgan case, supra, the Illinois Supreme Court followed the rule of the former Illinois cases, decided before the Joy case, cited by this court in the Smith case. The user, in the Morgan case, was in a city and seems to have been greater than that shown in this case. The court thus stated it: "For many years employees of the Oliver Chilled Plow Works and other pedestrians have made use of the New York Central's private right of way for travel from Ford Street to Arnold Street, along the path which Morgan was using when he was injured." The court, however, said that there was no evidence that the engine crew saw Morgan and applied the rule of the former cases, saying that "while the question of willful or wanton conduct is usually a question of fact for the jury, yet where all the evidence, viewed in its most favorable light for the plaintiff, does not tend to show a willful and wanton act done without regard to the safety of others, the jury should be directed to find a verdict for the defendant. Such is the case here." It may be noted that FARMER, J., who wrote the opinion in the Joy case, dissented in the Morgan case. Apparently the other members of the Illinois Supreme Court did not concur in his views there expressed as *dictum.* [See, also, Heater v. C. & A. Railroad Co., 200 Ill. App. 331; Swanson v. M., R. I. & E. T. Co., 204 Ill. App. 144; Ingram v. Jackson, 206 Ill. App. 466.]

Third. Insofar as the first exception stated in the Joy case has

been recognized and applied by the Illinois courts, it has been applied only to such a situation as that referred to in the cases coming within the first classification made by this court in the Smith case, namely, near the platform of a station or on a way leading thereto. Cases, subsequent to the Joy case, in which it is cited and applied, are Frechett v. Illinois Central Railroad Co., 197 Ill. App. 213, 1. c. 224; Bernier v. Illinois Central Railroad Co., 213 Ill. App. 530, 1. c. 537; Sary v. Peoria & Pekin Union Ry. Co., 248 Ill. App. 417, 1. c. 426 (in which plaintiff was not injured at such a place and was held to have failed to make a case); Collins v. Missouri-Illinois Railroad Co., 233 Ill. App. 545 (plaintiff was struck near a street crossing. This case seems to go further than the others. It was before the Morgan case but relies on the Neice and Bernier cases); Bernier v. Illinois Central Railroad Co., 296 Ill. 464, 1. c. 471. None of these cases, nor any other Illinois case that we can find, gives any basis for holding that use of the track by pedestrians, without permission, at a point outside of a town where the right of way is fenced on both sides, puts upon the railroad company any duty to keep a lookout for such persons. There being no proof that the trainmen ever saw plaintiff on the track ahead of the train, he cannot recover.

The judgment is reversed. *Ferguson* and *Sturgis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.

*NOTE: Opinion filed at September Term, 1934, April 17, 1935; motion for rehearing filed; motion overruled at May Term, July 9, 1935.