WILLIE SMITH, an Infant, by OLA SILVERMAN, His Next Friend, Appellant, v. TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation.—85 S. W. (2d) 425.

Division One, July 9, 1935.*

*Everett Hullverson* and *Mason & Flynn* for appellant.

---

*NOTE: Opinion filed at September Term, 1934, April 17, 1935; motion for rehearing filed; motion overruled at May Term, July 9, 1935.

*T. M. Pierce, J. L. Howell* and *Walter N. Davis* for respondent.

GANTT, P. J.—Action for personal injuries. Judgment for $18,-000. Plaintiff appealed from the order granting defendant a new trial.

In substance the petition alleged that plaintiff was injured by defendant's train in Venice, Illinois, while he was gathering coal from defendant's tracks, which pass through a thickly populated district. It further alleged that the Missouri humanitarian doctrine is the same as the willful and wanton doctrine of Illinois; that at and near the place on the tracks where plaintiff was injured many persons, for a considerable period of time, had been using the tracks to walk upon, cross and gather coal, and for other purposes; that plaintiff had been granted permission by an agent of defendant to remove coal from the tracks; that said use of that part of the tracks was known, or, by the exercise of ordinary care could have been known to the agents of defendant in charge of the train; that said agents saw, or, by the exercise of ordinary care could have seen plaintiff in a position of peril in time to have sounded a warning, slackened the speed, or stopped the train, thereby avoiding injury

to him, and that as a direct result of the negligent failure of said agents to do so, the plaintiff was injured.

The answer of defendant was a general denial with pleas that plaintiff was guilty of contributory negligence and that he was a trespasser. In substance it further alleged that under the law of Illinois a mere naked licensee to enter an estate does not create a duty on the part of the owner to provide against the danger of accident; that under said law a railroad company owes only the duty to not wantonly ·or willfully injure a trespasser or naked licensee upon its tracks; that even though those in charge of trains know that persons have been using the tracks to walk upon at places other than public crossings, the failure to give signals required by statutes or ordinances will not be a wanton or willful disregard of duty toward such persons, and that under said law a trespasser or naked licensee must plead that the defendant willfully and wantonly injured him before he can recover.

At the close of the case the court directed the jury that if the injury to plaintiff was the direct result of a negligent failure of defendant to warn him of the approach of the train, and if plaintiff, considering his age, was in the exercise of ordinary care for his own safety, the verdict should be for plaintiff. It also directed the jury to disregard the other assignments of negligence.

In granting a new trial the court was of the opinion that plaintiff was a trespasser and for that reason the jury should have been directed to return a verdict for defendant. Plaintiff challenges this ruling. The facts follow:

The east end of the river bridge from North St. Louis to North Venice is a trestle connecting with the west end of an embankment of earth, which extends east through North Venice to a viaduct over the Alton tracks, and then declines east for several blocks to a street in Madison, Illinois. The embankment is forty-three feet high between the trestle and the viaduct. On top of the embankment are two tracks of defendant. The south track is for eastbound and the north track is for westbound trains. The tracks extend west over the trestle and bridge to St. Louis, Missouri. The embankment extends east from the trestle eight hundred feet, and curves south for eight hundred feet to the viaduct. There seems to be either a public or private road running east and west at the base of the embankment on both the north and south sides thereof. Of course, no road or street crosses the tracks on the embankment. The photographs show a few shanty-like houses on the level land south of the embankment and near the river. They also show one or two business plants some distance north of the embankment and near the river. The other land north of the embankment and near the river appears unoccupied.

There were four or five paths on the south side of the embank-

ment. At six A. M. on July 5, 1930, plaintiff, eight years of age, and his uncle, James Butler, walked from the level ground up the path near the east end of the trestle. They proceeded to gather coal from the tracks on top of the embankment. After gathering coal for thirty minutes, plaintiff was eight hundred and Butler twelve hundred feet east of the trestle. At that time Butler saw an approaching eastbound freight train of twenty cars at the trestle. Plaintiff was between the rails of the south track and facing east. He did not see the approaching train and heard neither bell nor whistle. On hearing a noise he looked around and the engine of the train was within fifteen feet of tim. He did not remember whether he jumped from the track or the engine knocked him from the track. He only remembered that his arm was cut off by the front wheel of the engine. He did not see anyone on either the engine or the cars.

Butler heard neither the bell nor whistle. He did not see the engine strike plaintiff or the wheel run over his arm. As the train moved eastward he heard plaintiff crying and calling for help. He saw the engineer or fireman on the engine and a brakeman on the rear car. The train was moving slowly and did not stop. He went to plaintiff and walked home with him. Plaintiff was taken from his home to a hospital. The section foreman in walking the track about an hour after plaintiff was injured found the arm on the tracks. Immediately he so reported to the office of his superior.

The testimony on the question of user of the tracks by the public follows:

Plaintiff: He and Butler were the only persons on the embankment at the time he was injured. He had been going there for a month but did not know whether he had been going there a year. He did not ask permission to gather coal but was told by men walking the tracks and a man on a moving engine that he could gather coal. The engineman said: "Get all the coal you want."

James Butler: He and plaintiff had been going there about a year. He had seen women and boys gathering coal and also had seen them gathering garbage lunches thrown from dining cars. He also had seen section men working on the tracks.

Booker T. Butler: He lived near the embankment for three years and had seen people every morning and evening gathering coal and garbage lunches on the embankment. They also carried away ties discarded from the track. He never heard people ordered from the tracks. He had gathered coal and had seen persons throw coal from moving cars and down the embankment. Lately he had seen railroad agents running persons from the tracks.

Prentiss C. Fletcher: He had been on the embankment twice. On one occasion he went there to see a house burning on the north side of the embankment. On other occasions he went there to view the surrounding country. He had seen persons there a lot of times.

Every Sunday he had seen ten or fifteen walking on the tracks, and every morning he had seen persons gathering coal. He never heard people ordered from the tracks. Lately he had not seen persons throwing coal from moving cars.

Mack Chambers: He lived near the south side of the embankment for four years. Almost daily he had seen persons on the tracks gathering coal, usually at six in the morning. He had gathered coal and never had been ordered from the tracks. He had seen men throw coal from moving cars. Almost daily for three years he had seen persons lying on the side of the embankment waiting for trains from which to throw coal.

D. M. Bond: He was section foreman on the terminal but was not on the embankment every day. He had seen women board trains and throw coal from the cars. He had not seen many children on the embankment but had seen men and women throw coal from the moving cars to the tracks. They then threw it down the embankment. He also had seen coal thrown down the embankment from moving cars. On one occasion he saw twenty-one men around a fire in a nearby field waiting for a train from which to throw coal. They were in the habit of so doing. He had been section foreman thirteen years and during that time persons had been throwing coal from moving cars. He had not seen a dozen children on the embankment. He did not see persons gathering coal on the embankment every time he passed over the tracks. He was not on the embankment at six o'clock in the morning.

John Meyer: He was a civil engineer for defendant. He sometimes walked the tracks on the embankment and occasionally saw persons on the tracks. Usually he ordered them from the property. He had seen persons steal coal by throwing it from moving cars. It would roll down the embankment. Frequently he had seen persons on top of the embankment.

H. R. Perry: He was special agent for the terminal and had men working under him. It was his duty to protect the terminal's property. He had seen men on top of the embankment and had seen men throw coal from moving cars. He attempted to stop the practice by threatening to arrest them. They would run when they saw the special agents. He had seen persons lying on the side of the embankment waiting for trains from which to throw coal. In an effort to stop the practice he detailed men to ride the coal trains and make arrests. The movement of a train may cause coal to fall from the cars. They threw coal down the embankment and hauled it away in push carts. He had seen as many as five or six persons on top of the embankment gathering coal.

■ We have ruled that the pleading and proof of a case under our humanitarian rule does not authorize a recovery under the law of Illinois. [Cox v. Terminal Railroad, 331 Mo. 910, 55 S. W.

102

(2d) 685, l. c. 686.] ■ And in view of plaintiff's age, the question of contributory negligence was for the jury. [Maskaliunas v. Railroad, 318 Ill. 142, l. c. 149.] However, plaintiff's right to recover does not turn on the question of contributory negligence. It turns on the question of defendant's duty to plaintiff under the facts and circumstances in evidence. [Thompson v. Railroad, 226 Ill. 542, l. c. 545.]

■ Under the law of Illinois it is the general rule that a person using the tracks of a railroad company for his profit, convenience or pleasure is a trespasser or at most a mere licensee, and the only duty of trainmen to such person is the duty to not willfully or wantonly injure him after they know of his position of peril.

On the question, the Supreme Court of Illinois has ruled as follows:

"This court is committed to the doctrine that a railroad company, in the operation of its train, owes no duty to a trespasser upon its right of way or tracks except that it will not wantonly or willfully inflict injury upon him, and we have frequently held that the mere fact that signals required by statutes and ordinances are not given, even though those operating its trains may have knowledge of the fact that persons have been in the habit of crossing its tracks or walking upon them at places other than public crossings or public places, will not amount to proof of willful and wanton disregard of duty toward such trespassers. . . . [l. c. 567.]

"As we have before said, the plaintiff in this case was a trespasser. He was upon defendant's right of way and track, not upon any business with the defendant,—not by any right or claim of right,—but for his own convenience and pleasure. His declaration shows, and it is conceded by the evidence, that by putting himself to the inconvenience of walking a few blocks either north or south he could have crossed the tracks to the lake shore with safety." [Illinois Cen. Railroad Co. v. O'Connor, 189 Ill. 559, l. c. 564, 59 N. E. 1098.]

"In this case, as in those which have been cited, there was, at the most, no more than mere passive acquiescence. Permission to pass over an estate imposes no obligation on the owner to provide against accident. The defendant in error was on the railroad right of way not for the purpose of any business connected with the railroad company or the coal washer, for whose convenience, alone, the crossing was constructed. No right of way across the railroad was acquired merely because the railroad company did not see fit to enforce its rights and keep people off its property." [Cunningham v. T. St. L. & W. Railroad Co., 260 Ill. 589, l. c. 598, 103 N. E. 594.]

"The rights of trespassers and mere licensees are entirely different from the rights of those who come upon the premises of a railroad company for a purpose connected with its business, where

the invitation and the mutual interest raise a duty toward them. An invitation to come upon the premises at proper places for the purposes of business may be implied, but in this case the deceased was not upon the premises of the defendant for any such purpose. There is no controversy whatever over the fact that he was walking upon this path merely for his convenience, and that he was either a trespasser or there by sufferance, or, at most, there was a mere license to the public arising out of the fact that defendant had made no objection to the use made of the walk. All that was proved was, that the space between the two main tracks was filled with cinders and ballast level with the tops of the ties, so as to be smooth and firm, making a better way for walking than the public road adjoining, and that it was used by the employees of the defendant and the public without objection. The fact that the space was so filled had no tendency· to prove an invitation to the public to use the foot-path or that it was prepared for public use.'' [I. C. Railroad Co.·v. Eicher, 202 Ill. 556, l. c. 561, 67 N. E. 376.]

The rule is so stated in Illinois Cen. Railroad Co. v. Godfrey, 71 Ill. 500; Illinois Cen. Railroad Co. v. Hetherington, 83 Ill. 510; Blanchard v. Railroad, 126 Ill. 416, 18 N. E. 799; Thompson v. Railroad Co., supra; Morgan v. Railroad, 327 Ill. 339, 158 N. E. 724; Neice v. Railroad, 254 Ill. 595; Williams v. Railroad, 135 Ill. 491; Sary v. Railroad, 248 Ill. App. 417; Martin v. Railroad, 194 Ill. 138; C. R. I. & P. Ry. Co. v. Urbaniac, 106 Ill. App. 325, l. c. 328; Robards v. Railroad, 84 Ill. App. 477; Smith v. Railroad, 99 Ill. App. 296.

As exceptions to the rule defendant cites I. C. Railroad v. Leiner, 202 Ill. 624; East St. Louis Con. Ry. Co. v. Reames, 173 Ill. 582; Ill. Term. Railroad Co. v. Mitchell, 214 Ill. 151; C. & A. Railroad v. O'Neil, Admr., 172 Ill. 527; P. Ft. W. & C. Ry. Co. v. Callaghan, 157 Ill. 406; Neice v. C. & A. Railroad Co., 254 Ill. 595; Lake Shore Ry. Co. v. Bodemer, 139 Ill. 596; East St. Louis Ry. Co. v. O'Hara, 150 Ill. 580; Bremer v. L. E. & W. Railroad Co., 318 Ill. 11; C. B. & Q. Railroad Co. v. Murowski, 179 Ill. 77.

In some of the cited cases it was ruled that if the use of the tracks was such that trainmen knew that in all probability persons were at the time and place on or near the tracks, it was their duty to keep a lookout and so move the cars or train that persons would not be injured, and the failure to do so was evidence of wantonness and willfulness.

In other cases the injury occurred where the railroad tracks were on a street, adjacent thereto, or an extension thereof, and so connected with the street that the right of way on which the tracks were laid appeared to be a part thereof.

In other cases trespassers on a train were killed because of the failure of those in charge of the train to obey certain rules of the

company. It was held that such failure was evidence of wantonness and willfulness.

Defendant also cites Maskaliunas v. Railroad, 318 Ill. 142, and Joy v. Railroad, 263 Ill. 465.

In the Maskaliunas case the only negligence charged was the failure of defendant to provide a fence, as required by ordinance, separating the right of way from the adjacent public park.

In the Joy case exceptions to the general rule were stated as follows: "(1) places where the railroad company has permitted the public to travel along or over its track for a considerable period of time and a considerable number of people have availed themselves of such use, and (2) where the railroad runs through populous portions of a city, where people frequently go upon or pass over the track with knowledge of the company or for such a length of time that the company is chargeable with knowledge." There is no decision cited sustaining this statement of exceptions. Furthermore, the statement was unnecessary to a decision of any question presented by the record. Indeed, plaintiff concedes that the statement "may be regarded as *dictum.*"

The instant case is not within any exception to the rule. There was no evidence tending to show that anyone with authority to do so authorized plaintiff to gather coal from the tracks. He was a trespasser upon the property of defendant and was there solely for his own profit. The only duty the defendant owed him was not to wantonly or willfully injure him after discovery of the peril. There was no evidence tending to show that the enginemen saw plaintiff on or near the tracks. They were under no duty to keep a lookout. At the time of and just prior to the injury to plaintiff, they may have been occupied with duties in the engine cab, or, as stated by a witness for plaintiff, they may have been at said time "viewing the surrounding country." There was a failure of both pleading and proof. [Tietsort v. Railroad, 322 Mo. 640, 15 S. W. (2d) 779.]

Plaintiff next contends that there is no question of trespassing in the case on account of the absence of evidence tending to show that the land on which the tracks are located is the property of defendant. In other words, he argues that the tracks may be on a public street. The petition does not proceed on that theory. It alleged user by the public with knowledge of defendant as a basis for recovery. The case was tried on the theory that the tracks are not on a public street, and the contention is overruled.

The judgment should be affirmed and the cause remanded. It is so ordered. All concur.